UNION DEPOT COMPANY, Respondent, *v.* CITY OF ST. LOUIS ET AL., Appellants.

### March 2, 1880.

1. The act of March 18, 1871, authorizes the passage by the city of St. Louis of an ordinance consenting to the construction of a union depot upon portions of its streets.

2. Where the property taken for depot purposes was not an ordinary street, notoriously used as such, but was a strip of ground as to which it was reasonably doubtful whether it was a street, the city is estopped to set up want of power to pass the ordinance under which the property was taken for depot purposes, after the depot company, having good cause to believe the ground was not a street, had upon that basis made a great outlay.

APPEAL from the St. Louis Circuit Court.

*Affirmed.*

LEVERETT BELL, for the appellants.

S. M. BRECKINRIDGE, for the respondent: "Corporations can claim no exception from those rules and maxims which are established to enforce good faith and fair-dealing." — 32 N. H. 299, 6 Cranch, 53; 4 Wall. 495; 20 How. 299. "Acquiescence in and receipt of benefits of a contract or agreement estop a municipal corporation." — 7 Ohio St. 330; 8 Ohio St. 401; *Grant* v. *City of Davenport*, 18 Iowa, 191; *St. Louis* v. *Carondelet*, 29 Mo. 527; Opinion Supreme Court to Governor, 44 Mo. 21; *Railroad Co.* v. *Marion County*, 36 Mo. 303; *The State* v. *Dent*, 18 Mo.—; —— v. *Woodson, Governor* (per Dillon, J.).

HAYDEN, J., delivered the opinion of the court.

This is a proceeding to restrain the defendant from taking possession of certain ground in the city of St. Louis,

which the defendant claims is a public street, and which is designated as Eleventh Street, south of Poplar Street. The defendant, under ordinance 10,749, providing for the removal of obstructions from the streets, sought to remove the buildings which the plaintiff, a corporation under the act of March 18, 1871, in regard to the formation of union depots for railroads in cities, had erected upon the land, the dedication or· prior use of which as· a public street the plaintiff disputed.    The petition alleges that under the act the plaintiff proceeded to acquire real estate for a union depot in St. Louis,. within the prescribed limits, and at great expense has constructed a station, with all the appliances, which station is now used by the railroad companies at St. Louis ; that the City Council of St. Louis passed ordinance 9081, authorizing the plaintiff to lay down and maintain railroad tracks, and to construct its station in certain streets, which ordinance gives authority to use the ground here in question, if it was a street.    This ordinance is set out, and full compliance with the provisions on the plaintiff's part is alleged.    It appeared that the plaintiff did proceed according to the ordinance, and that, among other things, the plaintiff paid $20,000, which the city received, towards the building of certain bridges necessary in order to adapt the streets in the vicinity to the construction of the depot, and gave a bond for $200,000, conditioned as directed by the ordinance.    Under this ordinance the strip of ground claimed by the city to be a part of Eleventh Street was, as the petition alleges, so far as the public could lay any claim to it as a street at any time, surrendered to the plaintiff for its uses for a union station.    The strip was incorporated into and became a part of the depot, it being used as ground for a baggage-room, for which, on account of the great business, it was necessary to have· a large space.    Some ground immediately contiguous to this strip the plaintiff bought, while other land adjoining it was leased, and the whole was used and occupied under the act of the Legisla-

ture, and to carry out the purposes of its creation, by the plaintiff.

The defence was, that the city had no power to vacate or abolish a public street or highway, under the charter of March 4, 1870, or to do any act which would operate as such vacation, and that the ordinance, so far forth, was void. The evidence as to whether the strip of land in question was used by the public as a street, or accepted and recognized as such by the city, was conflicting, and the defendant has not relieved this matter from serious doubt. But assuming the point in its favor, it is clear, upon other grounds, that the court below was correct in its decision, by which a perpetual injunction was awarded against the defendant. By sect. 4 of the act of March 18, 1871, above referred to (Sess. Acts 1871, p. 59), corporations formed under that act have certain special powers : first, to take and hold, for the purposes described, such real estate as they may acquire either by conveyance to them or under the act by condemnation ; second, to take, occupy, and condemn any real estate needed for such station, etc., as prescribed ; third, with the consent of the proper authorities of the city, to have the right " to lay the necessary tracks over, upon, or under such streets of said city as may be necessary in order to make the necessary connections with said railroads, and may, with such consent, also construct such station or depot under, over, or upon any such streets." It is accordingly not necessary to resort to the city charter of 1870, or to the provisions of law in regard to the vacation of streets by the County Court. Wag. Stats. 1321, sect. 45 *et seq.* To carry out the purposes of the act in regard to union stations in cities, the Legislature deemed it necessary to give special powers in behalf of corporations formed for that purpose. Large space, it is contemplated, would in some instances be required, and in crowded cities the necessary room could only be secured, perhaps, by taking portions of public streets. By the ex-

press terms of the act the proper authorities of the cities may consent, and the depots may be constructed not only under and over, but upon any such streets. The ordinance by virtue of which the plaintiff claims, and in accordance with which this ground was taken and depot constructed, was passed by the City Council on the tenth day of July, 1874, and authority to pass it, so far as concerns the question here involved, was given by the Legislature of the State by the act of 1871.

Owing to the peculiar facts of this case, it may fairly be said that the doctrine of estoppel also applies. It is true, that the present is a case of a municipal corporation, and that it may well be said that the plaintiff should have taken notice, if the City Council had no power to grant a privilege which involved the vacation of a street, that such was the law. It is also true that the plaintiff appeals to a court of equity for affirmative relief. But the case is not here as if the strip in dispute had been an ordinary street, notoriously used as such. It might then be argued that the plaintiff knew the law and took its chances. But if the fact itself was obscure, the basis for that argument does not exist. And it must be admitted that, after careful investigation of much evidence, the plaintiff might have believed that the property was not a public street. It would be certainly contrary to principle, and work great injustice, to allow the defendants to urge want of power in the city to pass the ordinance, if the plaintiff, before entering on a task involving so much risk and outlay, had good reason to believe the property was not a street, and had been allowed to proceed upon that basis, and to acquire adjoining property and to pay money to the city under that impression.

The judgment is affirmed. Judge BAKEWELL concurs; Judge LEWIS is absent.