THE UNION DEPOT COMPANY v. THE CITY OF ST. LOUIS, *Appellant.*

1. **Municipal Corporation**: CONSENT TO USE STREETS: "PROPER AUTHORITIES." Section 67, page 315d, Wagner's Statutes, provides that any union depot company, with the consent of "the proper authorities of the city" in which the depot is to be constructed, shall have the right to lay tracks and erect buildings on streets; *Held,* that the phrase "proper authorities of the city" referred only to those properly so called, and did not include the county court.

2. **Estoppel.** Where a municipal corporation enters into a contract within its powers, the doctrine of estoppel applies with the same force as against individuals.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*Leverett Bell* for appellant.

The city charter of March 4th, 1870, was in force in February, 1874, and continued in force until October 21st, 1876, when it was superseded by the present charter of the city. Under the charter of March 4th, 1870, the city council was not authorized to vacate or abolish a street or highway, nor to do any act, nor to grant any privilege, which would operate as such vacation or abolition. Laws of 1870, p. 464, § 1, art. 3. The power to vacate streets in the city of St. Louis, in the year 1874, was vested in the county court of St. Louis county. 2 Wag. Stat., p. 1321, § 45. Ordinance 9,081, in so far as it attempted to vacate Eleventh street, was absolutely void, because the mayor and council were not, under the charter, possessed of any power to legislate in that direction. This feature in the ordinance being *ultra vires*, it cannot be supported as against the city under the doctrine of estoppel. It is not the case of a defective or faulty execution of a power, but it is one where the city had no power to act in the premises, and hence it is not estopped from setting up its own want of

power. Dill. Munic. Corp., (3 Ed.) §§ 457, 935; 5 Abb. New cases, p. 48, note. The phrase "proper authorities of the city," it is clear, included in its terms in 1874, the county court as well as the city council, because to the former body alone was confided the power to vacate streets. 2 Wag. Stat., § 45, p. 1321.

*S. M. Breckenridge* for respondent.

HENRY, J.—This is a proceeding to restrain defendants from interfering with the construction of certain buildings by plaintiff, and from removing and demolishing certain buildings erected by plaintiff, south of Poplar street in the city of St. Louis, upon what was formally dedicated and used as Eleventh street, as alleged by defendants, which the defendant, the city of St. Louis, proposes to re-open for use by the public as a street. A temporary injunction was, on the hearing in the circuit court, made perpetual, and defendants appealed to the St. Louis court of appeals, which affirmed the judgment, from which defendants have appealed to this court

There was a conflict of evidence, as to whether Eleventh street had ever been established and opened, pursuant to law; but conceding that, as contended by defendant, the street was so opened and established, yet by ordinance No. 9,081, adopted by the city, July 10th, 1874, the plaintiff was authorized, on certain conditions therein contained, which have been complied with by the plaintiff, to use and occupy so much of the street in question as has been used and occupied, and in the manner used and occupied by plaintiff, and the only question is whether the authority given by the city was *ultra vires.*

When the ordinance was passed, the power to vacate streets in the city of St. Louis, was by general law vested 1. MUNICIPAL COR- in the county court of St. Louis county, but PORATION: con- sent to use streets: the law under which plaintiff organized, "proper authori- ties." section 67, Wagner's Statutes, 315d, provides

that, with the consent of the proper authorities of the city, the corporation shall " have the right to lay the necessary track over, upon or under such streets of said city, as may be necessary in order to make the necessary connection with said railroads, and may, with such consent, also construct such station or depot under, over or upon such streets." This act is a general law, and by the general law the authority to vacate streets in cities was vested not only in the county court of St. Louis county, but in all the county courts of the State with respect to the cities within their respective counties. The act under which plaintiff organized, while it does not repeal that section of the law which confers such power upon the county court, does, in the particular instance, authorize what is equivalent to the vacation of a street by the city authorities. It still leaves and confides the power in the county courts to vacate streets in other cases. It provides that, with the consent of the proper authorities of the city, the plaintiff may use and occupy the street in a manner which destroys its utility as a public thoroughfare. The county court is in no sense " an authority of the city," and it is fairly inferable from the legislation on the subject, that it was the intention to permit the use of the streets of a city by union depot companies; provided the consent of the city authorities only should be obtained. Before the passage of that act, the city authorities had no power to vacate streets or participate with the county court in the exercise of the authority conferred upon that court in the matter of vacating streets, and if it was the purpose of the legislature to require the consent of the county court to the use of streets by union depot companies, it is singular that the only tribunal which then had power to vacate streets was not mentioned, and other authorities named, as those whose consents should be obtained, which before had no authority whatever in the premises.

The city has received a large sum of money from plaintiff, as one of the conditions upon which plaintiff

1. ESTOPPEL. should use and occupy the street, in the manner in which it has been used and occupied, and plaintiff has erected permanent and costly buildings on the strip of land in controversy, and the city cannot now contest plaintiff's right to do so after having given her consent, under an act of the legislature which authorized plaintiff so to appropriate the property on obtaining such consent. When a municipal corporation enters into a contract which it has authority to make, the doctrine of estoppel applies to it with the same force as against individuals. 7 Ohio St. 401; 18 Iowa 191; 8 Ohio St. 401; 32 N. H. 299; 4 Wall. 495; *Hann. & St. Jo. R. R. Co. v. Marion Co.*, 36 Mo. 294; *State v. Dent*, 18 Mo. 313. The judgment is affirmed. All concur.