GEORGE L. EDWARDS, Appellant, v. THE CITY OF KIRKWOOD and R. PAGENSTECHER, Collector, Respondents.

St. Louis Court of Appeals, April 5, 1910.

1. MUNICIPAL CORPORATIONS: Power to Contract: Constitutional Provisions. Under section 48 of article 4 of the State Constitution, municipal corporations are inhibited from paying or authorizing the payment of moneys on contracts made without express authority of law, and such contracts are declared to be null and void.

2. ———: ———: Contract for Legal Services: Presumption of Rightful Exercise of Authority: Pleading. Where it appears a municipality is acting within its jurisdiction, the presumption of right and not of wrong attends its official acts, unless the contrary appears; so that, in a case where a municipality is sued on a contract for legal services, which, under section 5907, Revised Statutes 1899, as amended in 1903, the city had power to make, where there was a vacancy in the office of the city attorney or where the attorney was employed to assist the city attorney, the petition is not insufficient for failure to allege the existence of the vacancy or that plaintiff was employed to assist the city attorney, as the law will presume the city officers exercised their authority rightly, nothing to the contrary appearing.

3. ———: ———: **Employment of Counsel: Matter of Discretion.**
The matter of employing counsel to represent a municipality
in matters of controversy involves the exercise of discretion.

4. ———: **Delegation of Power.** While a municipality may dele-
gate to an agent a mere ministerial act, unless expressly
forbidden, yet discretion conferred upon one class of city of-
ficers by positive legislative direction may not be trans-
ferred or delegated to others.

5. ———: **Employing Counsel: Unauthorized Delegation of Au-
thority.** Under section 5907, Revised Statutes 1899, as amend-
ed by Acts 1903, page 81, which provides that the mayor and
board of aldermen of a city of the fourth class may by ordi-
nance employ special counsel to represent the city in certain
contingencies and pay reasonable compensation therefor, an
ordinance of such a city, which directs the city collector to
employ counsel, is an invalid delegation of the power of the
mayor and board of aldermen.

6. ———: ———: ———: **Contracts.** A contract made by the
city collector with an attorney, under such an ordinance, is
*intra vires*, its only infirmity being that the power properly
lodged in the mayor and board of aldermen was defectively
executed.

7. ———: **Equitable Estoppel: Intra Vires and Ultra Vires.** An
equitable estoppel may not be invoked against a municipality
which has acted wholly beyond its power in entering into a
contract, yet where the power to contract is clearly vested in
a municipality and it is irregularly exercised, the doctrine of
equitable estoppel will be applied, it being the rule that as
to matters within the scope of their powers and the powers of
their officers, municipal corporations may be estopped on the
same principles and under the same circumstances as natural
persons.

8. ———: ———: **Invalid Contract for Employment of Attorney:
Acceptance of Service by City.** A municipal corporation, which
had authority to engage special counsel by its mayor and
board of aldermen, passed an ordinance authorizing the city
collector to engage special counsel, said ordinance being void
as an unauthorized delegation of the power of the mayor and
board. Plaintiff was engaged by the city collector in accord-
ance with the directions of the ordinance and performed the
services for which he was engaged, the city receiving and
retaining the benefit thereof. In an action for compensation
for the services performed under the contract, *held*, that the
city by accepting the fruits of the contract invoked the doc-
trine of equitable estoppel against itself and would not be

Edwards v. Kirkwood.

heard to dispute the obligation to recompense plaintiff on the terms which induced his services.

9. ———: **City Officers: Personal Liability.** In every case the presumption is, that municipal officers act for their principal and not for themselves, unless something to the contrary appears; and when such officers act within their authority, they are held to a personal obligation only in those cases where by apt and appropriate language a clear intention to assume such is disclosed.

10. ———: ———: **Scope of Authority: Persons Contracting Bound to Ascertain.** Where the obligation of the public negotiated through its agent is sought to be enforced against the municipality, the rule obtains that every person is required at his peril to ascertain at the time the contract is entered into that it is within the scope of the authority which the law conferred on the officer.

11. ———: ———: **Personal Liability of Officer: Mistake as to Law.** A public officer, who avowedly contracts for the municipality only and acts in good faith, without misrepresentations of facts, will not be held personally liable for a mere defective execution of the power, which appears to have resulted from an error as to the law, induced by the concurrence of all the parties.

Appeal from St. Louis County Circuit Court.—*Hon. J. W. McElhinney,* Judge.

Reversed and remanded.

*George L. Edwards, pro se.*

Appellant's petition states a good cause of action. Laws Missouri, 1903, p. 81; 1 Dillon's Mun. Corp. (4 Ed.), sec. 479; Reynolds v. Clark, 162 Mo. 680; State ex rel. v. Butler, 164 Mo. 214; Morrow v. Pike Co., 189 Mo. 610; Simpson v. Stoddard County, 173 Mo. 421.

*Albert B. Chandler* for respondent.

(1) Under the maxim *expressio unius exclusio alterius,* the powers of the city and the collector being both fixed by statute with reference to the employment of attorneys by either, plaintiff must state a case either

under sec. 5907, R. S. 1899 as amended, Laws 1903, p. 81, governing the appointment of city attorneys and employment of special counsel, or else under sec. 9302, R. S., governing the employment of a collector's tax attorney; one or the other. Const., Art. 4, sec. 48; Kolkmeyer v. City of Jefferson, 75 Mo. App. 683; Carroll v. St. Louis, 12 Mo. 444; Heidelberg v. St. Francois Co., 100 Mo. 74; Miller v. Douglas Co., 204 Mo. 194; McKissock v. Mt. Pleasant Twp., 48 Mo. App. 416; Gordon v. Lafayette Co., 74 Mo. 426; Boucher v. City of Moberly, 74 Mo. 113; Lemoine v. St. Louis, 102 Mo. 419; Sec. 5942, R. S. 1899; Sec. 6759, R. S. 1899; Sec. 5977, R. S. 1899; Crutchfield v. City of Warrensburg, 30 Mo. App. 456. (2) No case is stated under said Laws 1903, p. 81, governing appointment of city attorneys and employment of special counsel. Rumsey v. Shell City, 21 Mo. App. 175; Carroll v. St. Louis, 12 Mo. 444; Phillips v. Butler Co., 187 Mo. 698; East St. Louis v. Thomas, 11 Ills. App. 283; Mayor of Baltimore v. Ritchie, 51 Ind. 233; Tiedeman, Mun. Corp., sec. 113; Ryce v. City of Osage, 88 Ia. 558; Clough v. Hart, 8 Kan. 495; Orton v. State, 12 Wis. 509; Ayres v. Schmohl, 86 Mo. App. 349; Knapp, Stout & Co. v. St. Louis, 156 Mo. 356, and authorities cited under first point. Sec. 6759, R. S. 1899. (3) The choice of counsel for the city involves the exercise of discretion and judgment. That discretion being imposed by statute upon the mayor and board of aldermen, they cannot shift it to another officer, the city collector here. It cannot be performed by deputy. *Delegata potestas not potest delegare.* State v. Butler, 178 Mo. 272; East St. Louis v. Thomas, 11 Ills. App. 283; Campbell v. St. Louis, 71 Mo. 106; Broom, Leg. Max. 839; Joyce, Elec. Law, sec. 236; Mechem, Pub. Off., sec. 567; 2 Abbott, Mun. Corp., p. 1575; Tiedeman, Mun. Corp., sec. 113; Throop, Pub. Off., sec. 571, *et seq.;* Lewis v. Lewis, 9 Mo. 187; Sheehan v. Gleeson, 46 Mo. 105; Pinney v. Brown, 60 Conn. 164; Ayres v.

Schmohl, 86 Mo. App. 349; Rich Hill v. Donnan, 82 Mo. App. 349; 1 Am. and Eng. Ency. Law (2 Ed.), 975. (4) No case is stated under section 9203, R. S. 1899, governing the appointment of tax attorneys for the city collector. Under this section, the delinquents have to pay the attorneys as an additional penalty, and no liability falls upon the public or the public officers. Only under this section can a tax attorney be engaged. Secs. 5942, 9302, R. S. 1899; State ex rel. v. Ewing, 116 Mo. 129; City of Hannibal v. Bowman, 98 Mo. App. 108; State ex rel. v. Smith, 13 Mo. App. 421; Madison Co. v. Commissioners, 140 Ill. 539; Secs. 9246, 9273, 9294, 9316, R. S. 1899; Justices v. Yoakum 19 Ga. 611; People v. Supervisors, 28 Cal. 429; Boggs v. Placer Co., 65 Calif. 561; Brennan's Appeal, 1 Walker (Pa. Sup.) 522. (5) A special public sewer fund, levied under section 5969, R. S. 1899, cannot be charged with the costs of its collection; does not have to "pay its own way;" and any ordinance or contract attempting to divert a part of it in this manner would be void. Cases dealing with the defense of special funds once they are in the treasury, have no bearing upon the questions in issue here as to how the fund is to be collected. State ex rel. v. Bishop, 36 Mo. 58; State ex rel. v. Thompson, 36 Mo. 65; State ex rel. v. Thompson, 37 Mo. 87; Secs. 5942, 5969, R. S. 1899; Const., art. 4, sec. 48. (6) Bearing in mind the remedies open to the collector, the words "or otherwise" in the ordinance and contract providing for enforcement of collections "by suit or otherwise," refer to other legal process open to the collector *ejusdem generis* with suit, such as seizure, sale, etc., and do not contemplate voluntary payments with which the collector's attorney has no connection, and do not allow him a pound of flesh from the body thereof. Anderson v. Hawks, 70 Miss. 639; Century Dictionary; Loring v. Proctor, 26 Me. 27; Conley v. State, 85 Ga. 365; Sims v. Trust Co., 103 N. Y. 478; Lewis v. Smith, 9 N. Y.

502, 61 Am. Dec. 714; Wallace v. Jones, 82 N. Y. Supp. 451; D. A. R. v. Schenley, 204 Pa. St. 582; Galveston Co. v. Gorham, 49 Tex. 290; Donley v. Bank, 40 Ohio St. 50; State ex rel. v. Wood Co., 72 Wis. 637.

STATEMENT.—This is a suit on an express contract for attorney's fees. The court sustained a demurrer to the petition and plaintiff appeals. Omitting formal parts, the petition is as follows:

"Now comes the plaintiff and, by leave of court first had and obtained, files this, his amended petition, and says:

"Plaintiff states that the defendant, the city of Kirkwood, is now, and was at all the times hereinafter mentioned, a city of the fourth class, duly organized under the laws of the State of Missouri, providing for the organization of cities of said class; that the defendant, Rudolph Pagenstecher, is now, and was at all the times hereinafter mentioned, city collector for said city.

"For cause of action, plaintiff states that on or about the 20th day of February, A. D. 1905, the board of aldermen of the city of Kirkwood duly passed, and the mayor thereof approved, a certain ordinance, being numbered 302 and entitled 'An Ordinance Creating and Defining the Courses and Providing for the Construction of Public Sewers in the City of Kirkwood,' and whereby it was declared to be necessary for sanitary purposes that public sewers be established and constructed in said city and whereby the same were established, the courses, routes and dimensions set forth and the manner and method of constructing the same also set forth, as well as the manner and method of paying for the same, a copy of which said ordinance is herewith filed and referred to for greater certainty as to the terms and provisions thereof, and marked 'Exhibit A.'

"That on the——day of——, A. D., 1905, in pursuance to the provisions of the above-mentioned ordinance, the defendant, the city of Kirkwood, made and entered into a contract with Thomas J. Byrne for the construction of the public sewers by said ordinance established, and whereby said Thomas J. Byrne contracted and agreed to build and construct for said city the public sewers created and established by said ordinance, in pursuance to the terms and provisions of said ordinance, and whereby said city agreed to pay said Thomas J. Byrne therefor the sum of $—— payable monthly, as said work progressed, as provided in said contract a copy of which is herewith filed and referred to for greater certainty as to its terms and provisions, and marked 'Exhibit B.'

"That thereafter, for the purpose of providing a fund and the money with which to pay for the construction of said public sewers, and on or about the first day of May, A. D. 1905, the board of aldermen of the city of Kirkwood duly passed, and the mayor thereof approved, a certain ordinance, being numbered 318, and entitled 'An Ordinance Levying a Special Sewer Tax to Provide a Fund for the Building of Public Sewers in the City of Kirkwood,' and whereby a tax, equaling the sum of thirty-four thousand three hundred dollars ($34,-300), was levied upon all the property made taxable for state purposes over the whole of the defendant, the city of Kirkwood, and the city clerk of said city ordered to extend the said tax upon said property and make out appropriate and accurate tax books setting forth in suitable columns, opposite the names of each person and the item of taxable property as returned by the assessor and board of equalization, the amount of said taxes due thereon, apportioning the said sum of money levied among the several owners of all said property according to the respective valua-

tion thereof, and whereby it was provided when said taxes should be paid.

"By said ordinance it was further provided that the city clerk, as soon as said tax books were completed, should deliver the same to the city collector and charge the city collector with the full amount of taxes levied, and the said city collector directed, as soon as said tax should become due and payable, to proceed to collect the same, a copy of which said ordinance is herewith filed and referred to for greater certainty as to its terms and provisions, and marked 'Exhibit C.'

"That at all of the times hereinbefore and hereinafter mentioned, the St. Louis Union Trust Company was a corporation duly organized under the laws of the State of Missouri and engaged in a general trust company business, with its chief office and place of business located in the city of St. Louis and State of Missouri, and the executor of the estate of A. S. Mermod, deceased, having been duly appointed as such by the probate court of the county of St. Louis, Missouri, and having duly qualified and entered upon the discharge of the duties of its said office.

"In pursuance to the last above-mentioned ordinance, being Ordinance No. 318, the clerk of the city of Kirkwood prepared and delivered to the city collector the tax books in said ordinance provided for; that from said books it appeared that a tax for the purpose of paying for the construction of said public sewers, in the aggregate amounting to about the sum of nine thousand dollars ($9000) had been levied against the estate of A. S. Mermod, deceased; that thereafter and on or about the —— day of —, 1905, the St. Louis Union Trust Company, as executor of the estate of A. S. Mermod, deceased, commenced a proceeding by *certiorari* in the circuit court of St. Louis county, Missouri, against the defendant, the City of Kirkwood, and its officers, entitled State of Missouri ex rel. Union Trust Company, etc., Relator v. The

City of Kirkwood, C. G. Ricker, J. G. Hawken and R. Pagenstecher, the general object and nature of which said proceeding was to have the circuit court of St. Louis County, Missouri, quash and declare to be illegal, null and void the said tax levied by said ordinance, numbered 318, above mentioned, and particularly the portion of said tax levied upon and taxed against the estate of said A. S. Mermod, deceased, a copy of the petition of the relator in which said cause and the return of the respondents thereto is herewith filed and referred to for greater certainty as to the terms and provisions thereof, and marked 'Exhibit D.'

"That subsequent to the passage and approval of said last mentioned ordinance No. 318, and the levying of said tax and making the tax books therein provided for, and the delivery of the same to the collector of the city of Kirkwood, a large number of the owners of property in said city, upon whose property said tax had been levied, paid the amount levied thereon to the collector of said city when the remaining owners of property in said city, upon whose property said tax had been levied, either refused or neglected to pay the same. It thereupon became necessary for the city to adopt means and measures for the collection of the remainder of said tax amounting to about twenty thousand dollars ($20,000) and to employ counsel to aid the collector of said city in further collecting the same, and to defend the suit commenced against said city by the St. Louis Union Trust Company above referred to, and such other suits as might be commenced against said city to prevent the collection of the remainder of said tax, the property-owners, or some of them, of said city who had failed or refused to pay said tax, having threatened to commence other suits for said purpose against said city; that owing to the fact that the contractor with said city, for the construction of said public sewers, had entered upon the performance of the terms and conditions of his said contract and the con-

struction of said public sewers, and said city, in pursuance to said contract, was required to pay him for the work performed under said contract, monthly, it was necessary that said city should collect said tax expeditiously and without suit, if possible, that it might be enabled to perform its said contract with said contractor and pay him for the work done monthly as provided in said contract; that to that end, and with said objects in view, on or about the 11th day of September, A. D. 1905, the board of aldermen of the city of Kirkwood duly passed, and the mayor thereof approved, a certain ordinance, being numbered 323, and entitled 'An Ordinance Directing the Collector of the City to Enforce Payment of the Unpaid Portion of the Special Public Sewer Taxes,' and whereby the collector of said city was authorized and required to employ an attorney to aid, assist and advise him in the enforcement and collection of said taxes levied by said Ordinance No. 318 of said city above mentioned, and authorized and required to pay to such attorney as he might employ therefor 10% on all such special public sewer taxes collected subsequent to the date of the employment of said attorney; that in pursuance of said last above mentioned ordinance, the defendant, R. Pagenstecher, on the 16th day of September, A. D. 1905, made and entered into with plaintiff a certain contract whereby he employed plaintiff to aid, assist and advise him in the enforcement and collection of the unpaid portion of said special public sewer taxes, and agreed to pay plaintiff, for such services as he might render him in that behalf, the sum of ten per cent on all special public sewer taxes collected by suit or otherwise, subsequent to the date of said contract; that the defendant, the city of Kirkwood, and the defendant, R. Pagenstecher, as well as the plaintiff, intended and understood that, by virtue of the ordinance and contract last above mentioned, it was the duty of the plaintiff to defend the case commenced against said city and its

officers by the St. Louis Union Trust Company above mentioned, and any other suit which might be commenced against said city or its officers for the purpose of preventing the collection of said special public sewer taxes and to assist and aid the collector of said city to collect said taxes without suit, if possible, and that only such suits should be commenced for that purpose, if any, as plaintiff might deem advisable; that immediately upon the execution of said contract, plaintiff entered upon the performance of the terms and conditions thereof obligatory upon him, defended said suit, commenced against said city and its officers by the St. Louis Union Trust Company above mentioned, and has faithfully performed each and every term and condition of said contract obligatory upon him, except wherein prevented from so doing by the act of the defendants; that through the aid and assistance of the plaintiff, subsequent to the date of said contract, the defendant, R. Pagenstecher, collected of said taxes more than the sum of ten thousand dollars ($10,000) but has failed, neglected and refused, though demand therefor has been made, to pay plaintiff ten per cent thereof, as agreed to be paid him, or any part thereof, but has delivered and paid over the full amount of said taxes so collected to the defendant, the city of Kirkwood; that, although plaintiff has demanded of defendant, the city of Kirkwood, that it pay to him ten per cent of the amount of said taxes so collected and turned over to said city by the defendant, R. Pagenstecher, said city has failed, neglected and refused to pay said sum to plaintiff or any part thereof.

Wherefore plaintiff says he has been, and is, damaged in the full sum of one thousand dollars ($1000), for the recovery whereof against both of said defendants, he prays judgment and that by said judgment the defendant, the City of Kirkwood, may be directed and decreed to pay to plaintiff said sum of one thou-

sand dollars ($1000) out of said moneys so collected by said defendant, R. Pagenstecher, and paid to said city of Kirkwood as above stated, and for his costs in this behalf expended."

NORTONI, J. (after stating the facts).—It is argued that the petition fails to disclose the contract relied upon therein was within the powers of the municipal corporation. We are admonished by a great jurist that in determining the extent of the power of a municipal corporation to make contracts and in ascertaining the mode in which such power is to be exercised, careful attention should be given to the charter provisions of the municipality and the general legislation of the state on the subject, if there be any. And it is said where there are express provisions on the subject those will, of course, measure the authority of the corporation as far as they extend. [1 Dillon on Municipal Corporations (4 Ed.), sec. 443.] After looking into the matter, it is ascertained that section 48 of article 4 of the State Constitution provides "The General Assembly shall have no power to grant, or to authorize any . . . . municipal authority to . . . . pay nor authorize the payment of any claim hereafter created against the State, or any county or municipality of the State, under any agreement . . . made without express authority of law; and all such unauthorized agreements or contracts shall be null and void." The inhibition of the constitutional provision is obviously leveled against the power of municipalities to either pay or authorize the payment of moneys on contracts made without express authority of law and it says, too, that contracts made without such express authority shall be null and void. Accepting the allegations of the petition as true, it appears the defendant, Kirkwood, is a city of the fourth class organized and existing under the general laws of this State to be found in article 5, chapter 91,

Revised Statutes of Missouri 1899 as amended. See also article 5, chapter 91, Ann. St. 1906. In these provisions may be found the charter powers of the city. Among other powers therein conferred upon the mayor and board of aldermen is one to employ counsel to represent the city in certain cases. [Section 5907, R. S. 1899, as amended in 1903.] See Laws of Missouri, 1903, page 81, Ann. St. 1906, sec. 5907. This statute provides "if deemed for the best interests of the city, the mayor and board of aldermen may by ordinance employ special counsel to represent the city either in a case of vacancy in the office of city attorney or to assist the city attorney and pay reasonable compensation therefor." The plaintiff relies upon this statutory provision for express authority authorizing the city to enter into the contract with him declared upon in the petition. It is urged on behalf of the city that even though this statute confers authority upon the mayor and board of aldermen to employ special counsel by ordinance, the petition is fatally defective in that it fails to allege there was either a vacancy in the office of city attorney at the time the contract was made or that the plaintiff was employed to assist the city attorney as mentioned in the statute. We are not impressed with this argument, for if the petition is otherwise sufficient, and nothing appears to the contrary, the law will presume the city officers exercised their authority rightly; that is to say, it will be presumed either that there was a vacancy in the office of city attorney or that the plaintiff was employed to assist such city attorney if the city had such an officer. Even in cases of municipalities and tribunals of limited authority, when it appears they are acting on a given matter within their jurisdiction, the presumption of right and not of wrong attends their official acts unless the contrary appears. [Rutherford v. Hamilton, 97 Mo. 543, 11 S. W. 249; Aurora Water Co. v. Aurora, 129 Mo. 540, 31 S. W. 946; Asphalt Paving Co.

v. Ullman, 137 Mo. 543, 38 S. W. 458; State to use v. Crumb, 157 Mo. 545, 57 S. W. 1030.]

It is argued that though the petition charges the city duly passed an ordinance, which, of course, includes the action of the mayor and the board of aldermen, authorizing the employment of an attorney, it does not appear in the petition that such ordinance authorized the employment of the present plaintiff in that capacity. It is said although the ordinance directed and required the defendant, city collector, Pagenstecher, to employ counsel on the terms therein specified and that he did so, the contract so entered into by the collector was wholly ineffective and void for the reason the legislative department of the municipality could not delegate its discretion in that behalf. This argument we accept as sound in principle for the charter provision to be found in section 5907 as amended is to the effect that the mayor and board of aldermen may by ordinance employ counsel if deemed for the best interest of the city. The matter of employing counsel to represent the municipality in matters of controversy certainly involves the exercise of discretion. As a general proposition, the discretion of municipal governments resides in the lawmaking power. In this case, the statute in plain terms lodges the discretion as to the employment of counsel with the mayor and board of aldermen to be exercised by them, "if deemed for the best interest of the city." And furthermore it directs that body to exercise the power conferred in the usual manner by passing an ordinance to that effect.

It is true the mayor and board of aldermen did pass an ordinance which directed the collector to employ counsel, but so far as the allegations of the petition disclose, the matter of discretion as to what particular counsel should be employed was attempted to be delegated to the collector, for it is not averred that the collector was directed by ordinance to employ the

plaintiff. Had the ordinance directed the collector to employ plaintiff on the terms specified, the contract thereafter made by the collector with plaintiff in accordance with the ordinance would be entirely valid. In such circumstances, the discretion as to the particular counsel to be employed would have been exercised by the proper authority and the act of entering into the contract by the collector would have been ministerial in character only. It is always competent for a municipality to delegate to an agent the execution of a mere ministerial act unless restrained by express provisions to the contrary. [Ruggles v. Collier, 43 Mo. 352; Hannibal & St. Jo. R. R. Co. v. Marion Co., 36 Mo. 294; 1 Dillon on Municipal Corporations (4 Ed.), sec. 96; 20 Am. and Eng. Ency. Law (2 Ed.), 1218.] But when the grant of power is to the mayor and board of aldermen to act upon a given subject if deemed for the best interest of the city, as in this case, it involves a discretion which they may not delegate to another. Such a grant involves the idea that the mayor and board of aldermen are to act as one deliberative body to the end that they may assist each other by their united wisdom and experience, and the result of their conference be the ground of their determination. The discretion thus conferred upon the particular tribunal relates not alone as to whether the best interests of the city demand the employment of a counsel and the subsequent passage of an ordinance to that effect, if the question be determined in the affirmative, but requires as well that they shall exercise their discretion as to who shall be so employed as such counsel. Legislative power implies judgment and discretion upon the part of those who exercise it, and a special confidence and trust upon those who confer it. The discretion thus involved, therefore, may not be delegated to another unless expressly authorized. [Ruggles v. Collier, 43 Mo. 352; St. Louis to use of Murphy v. Clemens, 43 Mo. 395; 1 Dillon on Municipal Corporations

(4 Ed.), sec. 96; 20 Am. and Eng. Ency. Law (2 Ed.), 1217.] That discretion conferred upon one class of city officers by positive legislative direction may not be transferred or delegated to others is a proposition universally true. [Sheehan v. Gleeson, 46 Mo. 100; City of St. Louis v. Russell, 116 Mo. 248, 22 S. W. 470; East St. Louis v. Thomas, 11 Ill. App. 283; Pinney v. Brown, 60 Conn. 164; Broom's Legal Maxims (7 Ed.), 838; Joyce on Electric Law (2 Ed.), sec. 236; Mechem's Public Officers, sec. 567; Tiedeman on Municipal Corporations, sec. 113; Throop's Public Officers, sec. 573; 1 Am. and Eng. Ency. Law (2 Ed.), 975, 976.]

The case of East St. Louis v. Thomas, 11 Ill. App. 283, is directly in point to the effect that the power to appoint an attorney, being vested by charter in the city council, it cannot be delegated to the mayor by ordinance or otherwise. And an ordinance providing that in certain contingencies the mayor may appoint an attorney is void.

While the contract with the city declared upon in the petition is void and unenforceable for the reason stated, it is not void for *ultra vires*. It is within the power of the municipality to make such contract for the employment of counsel as indicated by the statute referred to. In so far as the city is concerned, the contract is *intra vires* and its infirmity lies only in the fact of defective execution of the power properly lodged in the mayor and board of aldermen.

Whatever may be said on the application of the doctrine of estoppel to municipal corporations with respect to *ultra vires* engagements or contracts expressly prohibited by law, is irrelevant here for the reason the case presents no such question and it will not be noticed. It is certainly now well settled that the doctrine of estoppel applies with full force to municipal corporations in those cases where the contract is within the power of the corporation and is

infirm only in the mode or manner of its execution. There is a distinction made, too, in some of the cases where the doctrine of estoppel is invoked as to contracts which had been performed in good faith by one dealing with either a municipal or private corporation and the infirmity lies in a defect of power with respect to a matter not prohibited by law. In such cases, presenting a defect of power in the first instance; that is, where the power was not expressly conferred upon the corporation to enter into the contract and such contract was not expressly prohibited, the courts have sustained and enforced the plaintiff's right to recover in suits on the contract by applying the doctrine of estoppel when to do otherwise would entail an unjust result. In those cases, it appeared the plaintiff had acted in good faith and performed his part of the engagement by incurring expense and trouble, the fruits of which were accepted and appropriated by the defendant corporation. See Hitchcock v. Galveston, 96 U. S. 341; State Board of Agriculture v. The Citizen's Street R. W. Co., 47 Ind. 407. However, unless most carefully scrutinized, those cases would seem to extend the doctrine quite beyond the limits generally accepted to be sound on principle when applied to municipal corporations. [1 Dillon on Municipal Corporations (4 Ed.), 457.]

The authorities generally go to the effect that the doctrine of an equitable estoppel may not be invoked as to municipalities which have acted wholly beyond their power in entering into the contract. But it is not so where it appears as here, that the contract relied upon was one within the express powers conferred. The principle of the authorities referred to is that one cannot do indirectly what cannot be done directly, and where there is no power or authority vested by law in officers or agents, no void act of theirs can be cured by aid of the doctrine of estoppel. However, where the power is clearly vested in the municipality and it is

irregularly exercised or there are defects and omissions in exercising the authority conferred by law, as in this case, which presents only the defective execution of the .power, the doctrine of equitable estoppel, it is said, may well be applied by the courts. Indeed, it is the universal rule that as to matters within the scope of their powers and the powers of their officers such corporations may be estopped upon the same principles and under the same circumstances as natural persons. See 2 Herman on Estoppel, sec. 1222; Motz v. Detroit, 18 Mich. 496; Brown v. Bowen, 30 N. Y. 519; Moore v. The Mayor, etc., 73 N. Y. 238.

It is the doctrine, too, of our own Supreme Court that where a municipal corporation enters into a contract within its powers, the doctrine of estoppel obtains with the same force as against individuals. [Union Depot Co. v. City of St. Louis, 76 Mo. 393; Union Depot Co. v. City of St. Louis, 8 Mo. App. 412.] For an application of the same doctrine in the case of a county which had contracted within its powers but had defectively executed the power conferred, see the recent case of Simpson v. Stoddard Co., 173 Mo. 421, 463, 464, 465, 466, 73 S. W. 700.

It appears from the allegations of the petition, which stand confessed by the demurrer, that immediately upon the defective execution of the power by contracting through its collector for the services, plaintiff entered upon and discharged, in a large measure, the terms and conditions of the contract. He defended certain suits then pending and faithfully performed each and every condition of the contract on his part until prevented by the city authorities. It is averred that through his aid and assistance the city collector collected more than $10,000 of the taxes and paid them over to the city of Kirkwood and both the city and the collector have wholly failed and refused to recompense him for his services. Under these circumstances, the most elementary principles of natural justice re-

quire that plaintiff should be compensated for such services as he has rendered. By accepting the fruits of the contract and appropriating the moneys arising from the plaintiff's efforts thereunder, the defendant city, through its voluntary act, has invoked the principle of an equitable estoppel above referred to and it may not now dispute the obligation to recompense plaintiff on the terms which induced his services. In so far as the city is concerned, the demurrer should be overruled.

As to the co-defendant, Pagenstecher, the city collector, we believe the demurrer was rightfully sustained, for it appears throughout the petition that he acted only in his official capacity under the ordinance requiring him to contract with an attorney, and there is not a word indicating that he intended to assume a personal obligation. In every case, the presumption is that municipal officers act for their principal and not for themselves, unless something to the contrary appears. When such officers act within their authority, they are held to a personal obligation only in those cases where by apt and appropriate language a clear intention to assume such is disclosed. [1 Dillon (4 Ed.), sections 452, 453, 454; Mechem's Public Officers, sec. 818.] As the powers and duties of such officers are defined and marked out by the law, they are open to ascertainment for one and all alike. In this respect, there is a distinction between a public and a private agency. In those cases, therefore, where the obligation of the public negotiated through its agent, is sought to be enforced against the municipality, the rule obtains that every person is required at his peril to ascertain at the time the contract is entered into that it is within the scope of the authority which the law conferred upon the officer. [Cheeney v. Brookfield, 60 Mo. 53; Mister v. Kansas City, 18 Mo. App. 217; Mechem's Public Officers, sec. 829; 1 Dillon (4 Ed.), Municipal Corporations, 447.]

From these principles, it would seem to be just that a public officer, who avowedly contracted for the municipality only, and acted in good faith without any misrepresentation of facts, ought not to be held personally liable for a mere defective execution of the power which appears to have resulted from an error as to the law, induced by the concurrence of all parties. While there are authorities to the contrary, the rule in this State is that an officer of a municipality, contracting officially and under an innocent mistake of the law in which the other party, with equal opportunities of knowledge, participated, neither party at the time intending to affix a personal liability, will be adjudged not personally liable on the contract. [Humphrey v. Jones, 71 Mo. 62.] This rule we believe to be eminently just, and especially so in the particular instance now in judgment, for it appears here that plaintiff is a lawyer and, therefore, was possessed of as much, if not more, information touching the legality or illegality of the power being exercised by the collector in entering into the contract sued upon, than either the collector, mayor or board of aldermen. In such circumstances, the doctrine is generally accepted to be sound. See Mechem's Public Officers, sec. 809; 23 Am. and Eng. Ency. Law (2 Ed.), 381 and note 4 to sec. 237 of 1 Dillon on Municipal Corporations (4 Ed.). The petition failed to state a cause of action against the defendant, Pagenstecher, personally, and as to him the demurrer was properly sustained.

That the case may proceed against the city, the judgment will be reversed and the cause remanded. It is so ordered. All concur.