## MARGUERITA SCHUELER, Administratrix, Appellant, v. CITY OF KIRKWOOD, Respondent.

**St. Louis Court of Appeals, June 8, 1915.**

1. **MUNICIPAL CORPORATIONS: Construction of Sewers: Sufficiency of Specifications: Delegation of Power.** An ordinance for the construction of aseptic tanks as part of a sewer system of a city of the fourth class, which provided that the tanks should have a sufficient capacity to purify the usual dry weather flow for a population of fifteen hundred people, that the sewage delivered to the tanks should be purified to the extent of ninety per cent. of solids, that the effluent discharge be not putrescible and be free from color and odor, and that the tanks should be built in such manner and of such material as to be satisfactory, in point of strength, to the city engineer, sufficiently stipulated the character of the tanks, within Sec. 9384, R. S. 1909, and the provision committing to the engineer the matter of material and strength was, at most, an irregularity, and did not render the contract for the construction of the tanks, in accordance with the ordinance, void.

2. ————: ————: **Sufficiency of Aceptance of Work.** The fact that the board of aldermen of a city of the fourth class accepted, by resolution, instead of by ordinance, aseptic tanks constructed by a contractor, as a part of the sewer system of the city, did not affect the right of the contractor to recover the reasonable value of the work.

3. ————: **Public Improvements: Irregular Exercise of Powers: Estoppel: Recovery on Quantum Meruit.** Where power has been conferred on a city to make a contract, and services have

been rendered in compliance therewith, and the city retains the benefit thereof, the city is estopped to deny a recovery for the reasonable value of the work, asserted independently of the contract, though predicated on its fulfillment, on the ground that the contract was irregular in some respect, or that the power to enter into it was exercised defectively; but, in such a case, the recovery must not exceed the contract price.

4. ————: Construction of Sewers: Installation of Aseptic Tanks: Powers of City. Under Sec. 9384, R. S. 1909, conferring power on cities of the fourth class to establish sewers, such a city may provide by an ordinance and a contract thereunder for the installation of aseptic tanks as a part of a sewer system to be constructed, although the power to install such tanks is not directly conferred; and where a city of the fourth class undertook, by an ordinance and a contract thereunder, to provide for the installation of aseptic tanks as a part of a sewer system to be constructed, the fact that the ordinance provided for such tanks was, of itself, a determination by the city that the tanks were indispensible to its sewer system, satisfying the rule that, where a city relies on an implied power, the thing it undertakes to do must be indispensible.

5. ————: Officers: Presumption of Correct Action. Where nothing to the contrary appears, the law presumes that city authorities did not exceed the power conferred upon them.

6. ————: Public Improvements: Stipulation for Payment from Special Fund: Right of Recovery by Contractor. Where a contractor performs services for a municipality under an ordinance or contract stipulating that his compensation shall be from a special fund to be raised therefor, and such fund, when accumulated, is diverted by the municipality to another purpose, the diversion is a breach of trust, and the contractor may enforce his claim against the general revenue of the municipality; and this is true notwithstanding the fund was raised by levying taxes under an ordinance which was subsequently declared unconstitutional, since taxes voluntarily paid under a void levy cannot be recovered.

Appeal from St. Louis County Circuit Court.—*Hon. G. A. Wurdeman*, Judge.

REVERSED AND REMANDED.

*Thomas Bond* and *Walter N. Davis* for appellant.

(1) Unless by authority of statute, money voluntarily paid to discharge a tax cannot be recovered

back because the tax was irregular or void. State ex
rel. Rice v. Powell, 44 Mo. 436; 4 Dillon on Municipal
Corporations (5 Ed.), secs. 1617-1619; Robins v. La-
tham, 134 Mo. 466. (2) If moneys belonging to a
particular fund have been received by the city, then a
diversion of these moneys from the fund, by the city,
is a breach of contract, for which the city is liable.
Valleau v. Newton County, 72 Mo. 593; Valleau v.
Newton Co., 81 Mo. 591; 4 Dillon on Municipal Cor-
porations (5 Ed.), sec. 860; 28 Cyc., page 1058; Allen
v. Davenport, 107 Iowa, 90; 20 Am. & Eng. Ency. of
Law, page 1176. (3) Even though the original con-
tract was unauthorized, yet where the work has been
done and the city has accepted the work and money
has been paid into a particular fund by the taxpayers,
in payment of that work, the city is estopped to deny
the claim. Union Depot v. St. Louis, 76 Mo. 393; Whit-
worth v. Webb City, 204 Mo. 579;

*Robt. C. Powell* for respondent.

(1) It is a general and undisputed proposition
of law that a municipal corporation possesses and can
exercise the following powers and no others: First,
those granted in express words; second, those neces-
sarily or fairly implied in or incident to the powers
expressly granted; third, those essential to the accom-
plishment of the declared objects and purposes of
the corporation—not simply convenient, but indis-
pensable. 1 Dillon on Municipal Corporations (5 Ed.),
page 448, sec. 237; Leach v. Cargill, 60 Mo. 316; State
v. Butler, 178 Mo. 272; Joplin v. Leckie, 78 Mo. App. 8;
Kirkwood v. Meramec Highlands Co., 94 Mo. App.
637; Sec. 6759, R. S. 1899 (now Sec. 2778, R. S. 1909,
and cases cited in note); Likes v. City of Rolla, 167
S. W. 645. (2) When special powers are conferred
or where a special method is prescribed for the exer-

cise and execution of a power, this brings the exercise of such power within the provision of the maxim *expressio unius*, etc., and by necessary implication forbids and renders nugatory the doing of the thing specified, except in the particular way pointed out. Kolkmeyer v. City of Jefferson, 75 Mo. App. 683; City of Unionville v. Martin, 95 Mo. App. 28; Heidelberg v. St. Francois Co., 100 Mo. 74; McKissock v. Mt. Pleasant Twp., 48 Mo. App. 416; Cotter v. Kansas City, 251 Mo. 224; Likes v. City of Rolla, 167 S. W. 645. (3) The alleged contract was void. First, admitted by appellant; second, because it was improperly executed. Matthews v. City, 68 Mo. 115; Neill v. Gates, 152 Mo. 585; Ruggles v. Collier, 43 Mo. 353; Smith on Municipal Corporations, sec. 564; Cooley on Constitutional Limitations (4 Ed.), page 248; City of Unionville v. Martin, 95 Mo. App. 28. Third, at the time it purports to have been executed the city had not approved or adopted any plans or specification for the septic tanks therein contemplated and had not by ordinance provided the extent, dimensions or regulations of the construction of such tanks. Sec. 5969, R. S. 1899 (now Sec. 9384, R. S. 1909); Neill v. Gates, supra. Fourth, at the time the alleged contract purports to have been executed no estimate of the cost of building said tanks was made by the city engineer or other proper officer of said city and submitted to the board of aldermen. Sec. 5985, R. S. 1899 (now Sec. 9407, R. S. 1909). Fifth, because the ordinance, the alleged father of the contract, was void and so held by our Supreme Court. Union Trust Co. v. Pagenstecher, 221 Mo. 121, 131. Sixth, Kirkwood, as a city of the fourth class, had no power or authority, at that time, by statute or incident thereto, to build the septic tanks mentioned and described in the alleged contract. Sec. 9391, R. S. 1909, Laws 1909, page 304. (4) The alleged contract was not carried out in that only two tanks were built instead of three and proof failed to substantiate plaintiff's contention

that the defendant failed and refused to provide loca-
tion for the third tank, in explanation of failure to
build the third tank. (5) The alleged cause of action
attempted to be stated in plaintiff's petition did not
accrue within five years next before the commencement
of this suit.

NORTONI, J.—This is a suit for the reasonable
value of two aseptic tanks installed by plaintiff's de-
cedent under a contract with defendant city as parcel
of its public sewer system. The amount sued for is
$4700 and interest. At the conclusion of the evidence
the court directed a verdict for defendant and plaintiff
prosecutes the appeal.

Plaintiff is administratrix of the estate of her
deceased husband, Charles Schueler, and sues in that
capacity. Defendant, a city of the fourth class, inter-
poses a more or less technical defense, to the effect
the contract for the installation of the several aseptic
tanks was void; also that it was not within the power
of the city.

It appears that, on the 20th day of February,
1905, the city of Kirkwood, under its ordinance number
302, duly enacted, provided for the building and con-
struction of a system of public sewers. The ordinance
set out in detail the course, routes, dimensions and
materials to be employed in the construction of the
sewer system and provided, too, that aseptic tanks
should be used in connection therewith, as is indicated
on the map of the sewer system of Kirkwood, prepared
by R. M. Douglass, now on file with the city clerk of
Kirkwood.

By section 4 of this ordinance it was provided sub-
stantially that there should be constructed and installed
three aseptic tanks, which are by the ordinance de-
clared to be a part of the public sewer system of the
city, one of such tanks to be located on the southeast
corner of Monroe and Taylor avenues; one to be lo-

cated in St. Peters' Cemetery; and one to be located at a designated point on private property. The ordinance stipulated that such aseptic tanks should be of a sufficient capacity to purify the usual dry weather flow for a population of 1500 people, so that the sewage delivered to said tanks be purified to the extent of consumption of ninety per cent of solids; that the effluent discharge be not putrescible and be free from color or odor, and that the tanks be built in such manner and of such material as to be satisfactory in point of strength to the city engineer; also that bids be received and contracts let for the construction of such tanks, under the ordinance, either as a whole, or for the construction of any one or more of them; that the mayor and board of aldermen cause the aseptic tanks above provided for to be constructed by contract or contracts awarded to the lowest and best bidder; after which follows the requirements touching the matter for advertisements, for bids, acceptance thereof and requiring the same to be filed with the city clerk, etc. The ordinance further provided that, upon the award of the work by the board of aldermen, the successful bidder shall enter into a contract with the city of Kirkwood to faithfully do and perform the work in accordance with the provisions and requirements of the ordinance, and that the work should be constructed under the supervision of the sewer committee of such board, which committee is required to personally inspect the work as it progresses.

Touching the matter of compensation, it is provided by the ordinance that the tanks and installation shall be paid for from a fund raised by levying a tax on all of the property within the city of Kirkwood made taxable for such purposes. The ordinance directs that the contract or contracts shall be signed on behalf of the city of Kirkwood by the mayor, and attested by the city clerk, who shall cause the seal of the city to be thereto affixed.

Thereafter, on April 7, 1905, in pursuance of the ordinance the board of aldermen took up for consideration bids for the installation of such aseptic tanks and acted thereon as follows, as evidenced by the records of such board:

"The board took up for consideration the bids for aseptic tanks, and the bid of Charles Schueler being the lowest and best bid, and the same, . . . being within the estimate submitted to the board of aldermen by the city engineer, was accepted by the board, and the mayor ·directed to enter into contract with said Schueler for building said aseptic tanks, etc."

Subsequently, on the first day of May, 1905, in pursuance of the resolution above quoted and the fore-·going ordinance, the mayor and city clerk on behalf of the city entered into a contract with Charles Schueler for the building of the three aseptic tanks mentioned in the ordinance, and this contract with all its details duly executed appears in evidence. Among other things, the contract so entered into between the mayor and Charles Schueler recites, in effect, that the tanks shall be built in accordance with the requirements of the ordinance and that the city shall have a period of one year after the completion in which to test the same before payment shall be made. The contract ·provides for the building of two tanks and likewise the building of a third tank, upon the performance of certain matters by the city of Kirkwood, which were not performed, and the third was therefore not installed. No claim is made on account of the third in this suit, which proceeds, as before stated, for the reasonable value for installing two of the tanks only.

The two aseptic tanks mentioned in the petition were duly installed by the contractor, Charles Schueler, in accordance with the requirements of the ordinance and the contract, and under the supervision of the sewer committee and the city engineer, so as to be completed on the first day of June, 1906, and ever since

that date have been in use by defendant city as a part of its sewer system. Indeed, thereafter, on the fourth day of September, 1906, and again on the nineteenth day of September, 1907, the board of aldermen, upon the recommendation of the sewer committee and by a formal vote, approved the performance on the part of Schueler, the contractor, and accepted the tanks and, as before said, they have ever since been in use by the city.

In connection with the construction of the sewer system, the city passed an ordinance levying a tax of $2.50 per hundred dollars on the assessed valuation of all the property of the city of Kirkwood, in order to raise the money to pay for the same, and the collection of this tax was subsequently restrained by certain property holders, on the theory that it was unconstitutional. However, as much as, or more than, twenty-three thousand dollars were paid into the city treasury on account of such tax, for the purpose of compensating the construction of the sewer system, including the aseptic tanks, when the court declared the ordinance levying such tax to be void, for that it exceeded the constitutional limit of fifty cents per hundred dollars on the valuation of the entire taxable wealth of the city. [See Union Trust Co. v. Pagenstecher, 221 Mo. 121, 119 S. W. 1103.] Something more than three thousand dollars were also paid in on account of the tax thereafter, however, and it appears that, in all, the city collected over $26,000 of taxes with which to construct and pay for the sewer system including the aseptic tanks. More than $7000 of this tax, under the provisions of the ordinance, were levied and collected for the purpose of compensating the installation of aseptic tanks, and this amount was on hand in the city treasury at the time the board of aldermen passed the resolution approving and accepting the tanks and the work installing them. But it appears that, after the decision of the Supreme Court declaring

the tax void, the city diverted all of these monies into other channels, and refused to pay plaintiff's husband for the tanks so installed by him as above indicated.

On what theory the court directed a verdict for defendant does not appear, but it is argued here that plaintiff may not recover for the reason the contract was void because it does not appear that plans and specifications pertaining to the tanks were on file with the city clerk prior to the time the contract was entered into. Touching this matter, the statute (section 9384, R. S. 1909) requires that the public sewers shall be constructed of such dimensions and under such regulations as may be provided by ordinance. The ordinance sufficiently stipulated the character of the aseptic tanks to be installed, in that it required them to have a sufficient capacity to purify the usual dry weather flow for a population of 1500 people; that the sewage delivered to said tanks should be purified to the extent of consumption of ninety per cent of solids; that the effluent discharge be not putrescible and be free from color or odor; moreover that the tanks should be built in such manner and of such material as to be satisfactory in point of strength to the city engineer. After having thus prescribed the general requisites of such tanks by ordinance, it was competent for the board of aldermen to commit to the city engineer the matter concerning the material and strength thereof. Although the board of aldermen may not delegate legislative discretion to the city engineer, such a minor irregularity as conferring authority on him to approve the detail pertaining to the material and strength of the tanks is not sufficient to render the contract void in the sense essential to destroy its effect as a basis for an estoppel on the part of the city, when it appears the services thereunder have been fully performed and the city availed itself of the benefits. [See Whitworth v. Webb City, 204 Mo. 579, 103 S. W. 86.]

It appears affirmatively in the case that the estimate of the cost of the sewers and also of the aseptic tanks made by the city engineer, required by section 5985, Revised Statutes 1899 (same sections, 9407, R. S. 1909), was before the board of aldermen at the time Schueler's bid for constructing the tanks was accepted, and that, upon it appearing the bid was within such estimate, the mayor and city clerk were directed to enter into a written contract with him thereabout. Obviously the contract is not void, and even though some slight irregularies appear in respect of matters of detail contemplated therein, plaintiff is nevertheless entitled to recover the reasonable value of the two aseptic tanks installed and so retained and used by the city.

The mere fact that the board of aldermen accepted the tanks by resolution September 4, 1906, and again September 19, 1907, rather than by ordinance duly passed, is immaterial to plaintiff's right to recover the reasonable value, for the contract entered into and which induced their installation in the first instance was within the power of the city and it is estopped to deny the right of compensation to that extent. Although it be true that an estoppel may not be invoked against a municipal corporation which acts entirely beyond the scope of the power conferred upon it, this doctrine does not obtain as to such matters as fall within the powers conferred. For an application of the broad principle, see Wilson v. King's Lake Drainage etc. Dist., 257 Mo. 266, 165 S. W. 734; s. c., 176 Mo. App. 470, 158 S. W. 931; Union Depot Co. v. St. Louis, 76 Mo. 393; s. c., 8 Mo. App. 412. Therefore, where it appears that the power has been conferred upon the municipality to enter into the contract in compliance with which the services have been rendered, the principle of estoppel obtains alike as in the case of individuals, where such contract has been fully complied with and the benefits received thereunder and

retained and used by the adverse party. The right to recover the reasonable value thereof may be asserted independently of the contract, though it is predicated on its fulfillment—that is, by showing compliance with the terms imposed on the part of the party seeking relief—and the mere fact that the contract is, in some respects, irregular or that the power to enter into it, lodged in the corporation was defectively exercised, will not suffice to repel such right as to the benefit conferred on the one part, and received, retained and utilized on the other. [See Edwards v. City of Kirkwood, 147 Mo. App. 599, 127 S. W. 378; Union Depot Co. v. St. Louis, 76 Mo. 393; s. c., 8 Mo. App. 412.] But, of course, the recovery must not exceed the contract price. [American Surety Co. v. Fruin-Bambrick Construction Co., 182 Mo. App. 667, 166 S. W. 333.]

The evidence tends to prove that plaintiff's decedent installed two of the aseptic tanks precisely in accordance with the contract and that the third one was not installed because of the failure of defendant to provide for its location. The tanks were found sufficient in all respects and the city retained and used them. Obviously the precepts of natural justice suggest that it should pay the reasonable value of the tanks so constructed.

But it is argued the doctrine of estoppel may not be invoked here against defendant, because it was not within the power of the city to provide by ordinance and contract thereunder for the installation of the aseptic tanks. Obviously this argument is without merit. The statute (section 5969, R. S. 1899, now section 9384, R. S. 1909) provides:

"The board of aldermen shall have power to cause a general sewer system to be established, which shall be composed of three classes of sewers, to-wit: Public, district and private sewers. Public sewers shall be established along the principal courses of drainage, at

such points, to such extent, of such dimensions and under such regulations as may be provided by ordinance, and these may be extensions or branches of sewers already constructed, or entirely new throughout, as may be deemed expedient."

Although there is a statute now which expressly authorizes the installation of aseptic tanks, no such provision appears in the section quoted, and that section is identical with section 5969, Revised Statutes 1899, which was in force at the time the contract was entered into. But though such be true, it would seem that the city possessed a clear implied power to install these aseptic tanks as parcel of its public sewer system. The question of power involved here relates to the public sewers, which the statute expressly authorizes the board of aldermen to construct. The ordinance provides for the aseptic tanks as parcel of such public sewer system and expressly declares such tanks to be a part of such system.

It is argued that a municipal corporation possesses and can exercise the following powers and no others: "First, those granted in *express words;* second, those *necessarily or fairly implied* in or *incident* to the powers expressly granted; third, those *essential* to the accomplishment of the declared objects and purposes of the corporation—not simply convenient, but indispensable;" and moreover that any fair, reasonable, substantial doubt concerning the existence of power is resolved by the courts against the corporation and such power denied. [See Dillon, Municipal Corporations (5 Ed.), section 237.] The point made is, that, as the statute does not expressly authorize the installation of the aseptic tanks in connection with the public sewer system and the power of the municipality touching this matter is, therefore, to be sought among those implied only, it must appear that such tanks were indispensable.

In the absence of evidence on the question showing otherwise, it is to be presumed that the city authorities —that is, the mayor and board of aldermen—properly exercised the discretion lodged in them in providing by ordinance for the aseptic tanks as parcel of the public sewer system. The city authorities evidently not only regarded the aseptic tanks as essential to the sewer system, but as indispensable to the object sought to be attained by them—that is, a complete system of sewage—for the presumption is, if nothing to the contrary appears, which is true here, that they did not exceed the power conferred. Some one must determine as to whether or not the aseptic tanks are essential and indispensable to a complete system of sewage, and manifestly the statute must be regarded as having conferred a discretion thereabout on the board of aldermen.

The ordinance having especially provided for such tanks as a part of the public sewer system, the matter must be viewed here as though they were indispensable thereto, in the absence of any evidence whatever on the subject, one way or the other. Especially is this true when it appears that the aseptic tanks are employed for the purpose of the purification of sewage, as well as mere receptacles therefor. It may be, for aught that appears, that the city of Kirkwood was not provided with any outlet for its sewage, affording a sufficient supply of water to carry it away—that is, such as a river or stream of considerable size. If such be the fact, then no one can doubt that aseptic tanks may be regarded as indispensable, for, otherwise, the sewage might be opened into a small stream without sufficient flow to prevent its pollution, with the resulting spread of disease and disaster, and thus annihilate the very purpose sought to be accomplished by establishing the sewers.

It is provided in the contract under which the tanks were installed that payment therefor shall be made

from the special fund raised by the assessment of the special sewer tax referred to in the statement of facts, and in no case from the general revenue of the city. It appears, as above stated, that the city levied a general sewer tax under the statute (section 5969, R. S. 1899; same section now 9384, R. S. 1909) of $2.50 per hundred dollars on the assessed valuation of the city, and this tax was declared unconstitutional at the suit of a property holder. However, in the meantime, more than $26,000 had been voluntarily paid thereon by the property holders of the city of Kirkwood, and as much as, or more than, $7000 of this was in a fund to compensate for the aseptic tanks, said to be of the value of $4700. The evidence reveals beyond question that the city diverted all these monies and utilized them for purposes other than that contemplated in the ordinance assessing the tax and under which such taxes were paid into the city treasury. This being true, plaintiff is not precluded by the provision of the contract above referred to exempting the general revenues of the city and providing that the compensation shall be had from such special fund only, for the reason the city violated the trust reposed with respect of this matter. When a contractor performs services for a municipality under an ordinance or other contract provision, stipulating that his compensation shall be made from a special fund to be raised therefor, and such fund, when accumulated, is diverted by the municipal authorities to another purpose instead, such diversion is regarded as a breach of trust on the part of the municipality, so as to permit the contractor to lay his claim against the general revenue of the city in lieu of his rights to recourse against the fund so wrongfully withdrawn and thus rendered unavailable to him. [See City of Lansing v. Van Corder, 24 Mich. 456.] The principle has been declared and vindicated as well by our own Supreme Court. [See Valleau v. Newton County, 72 Mo. 593; s. c., 81 Mo. App. 591.] The fact that the

fund was raised as taxes under an ordinance subsequently declared unconstitutional in nowise relieves the situation, for taxes voluntarily paid, which might have been successfully resisted as though under a void levy, may not be recovered by those voluntarily paying. [See Walker v. St. Louis, 15 Mo. 563; Christy's Adm'r v. St. Louis, 20 Mo. 143; State ex rel. v. Powell, 44 Mo. 436; Robins v. Latham, 134 Mo. 466, 36 S. W. 33.]

The judgment should be reversed and the cause remanded. It is so ordered. *Reynolds, P. J.,* and *Allen, J.,* concur.