LEE SAVAGE, Respondent, v. CITY OF SPRINGFIELD, Appellant.

| 83 | 323 |
|----|-----|
| 92 | 619 |
| 83 | 323 |
| 99 | 1488 |

St. Louis Court of Appeals, February 27, 1900.

1. **Municipal Corporations:** ONLY BOUND BY CONTRACTS IN WRITING: AGENT. A municipal corporation is restricted in making contracts, and can make them only in writing as prescribed by law, and its agent could not make a contract that in any other way would bind it.

2. ———: ———: IF PAROL, VOID. The city having purchased the horse by parol through an agent, such purchase was not within the purview of the law, or scope of the powers of the city, and the contract of purchase, therefore, was void.

3. ———: VOID CONTRACT: NO RATIFICATION THEREOF. The contract being void *ab initio* there could be no ratification of it.

Appeal from the Greene Circuit Court.—*Hon. James Tilford Neville*, Judge.

REVERSED.

*Arch A. Johnson* for appellant.

(1) Under the law the defendant city, had no authority to pay for a horse that was dead at the time the contract was made between the parties. Sec. 48, art. 4, Const. of Mo. Dillon Municipal Corp., secs. 457, 935, 936. (2) The plea of *ultra vires* was available as a defense to such contract. Dillon Municipal Corp., sec. 504; City of St. Louis v. Davidson, 102 Mo. 149; Cheeney v. Brookfield, 60 Mo. 53. The instruction given by the court was not the law. Saxton v. Beach, 50 Mo. 488; State v. Saline County, 45 Mo. 242; Keating v. Kansas City, 84 Mo. 415. (3) From a void contract no cause of action can arise. Crutchfield v. Warrensburg, 30 Mo. App. 456; Inhabitants of Schell City v. Ramsey, 39 Mo. App. 264; Taylor v. School District, 60 Mo. App. 372.

*Francis M. Wolf* for respondent.

(1) To buy a live horse for the purposes indicated, is within the powers of the city. R. S. Mo. 1889, sections 1513 and 1494. The city having the power, it has the right of appropriation to its own use; and having appropriated the horse to its own use, and shod and fed it and controlled it, the city is legally bound to pay for it, even though there was irregularity in the purchase. Such a purchase and appropriation is not *ultra vires*. The fact of purchase by the city may be implied and inferred by authorized corporate acts without a vote, or deed, or writing. I Dillon on Municipal Corporations, [4 Ed.], p. 533, secs. 459 and 460. If not in

violation of its charter, or of statute prohibiting it, and the city by its promise induced a party, who, relying on such promise, and in execution of contract delivered property, the city would be liable. 1 Dillon on Municipal Corporations [4 Ed.], p. 537, sec. 461. (2) Authorized contracts made by a city are subject to the same rights and liabilities as an individual. 1 Dillon on Municipal Corporations [4 Ed.], p. 548, secs. 472 and 476. (3) A contract with a corporation may be implied from the enjoyment of the benefit of the consideration, and hence from the use of property it has enjoyed after such property was delivered. San Francisco Gas Co. v. San Francisco, 9 Cal. 458; Blackman v. Charleston, 42 N. H. 125; Bissel v. Railroad, 22 N. Y. 258; 1 Dillon on Municipal Corporations [4 Ed.], p. 533, sec. 458. (4) The present state of authorities clearly justifies the opinion of Chancellor Kent that corporations may be bound by implied contracts within the scope of their powers, to be deduced by inference from authorized corporate acts without either a vote or deed, or writing. 1 Dillon on Municipal Corporations [4 Ed.], p. 533, sec. 459, note 2; 2 Kent's Com. [12 Ed.], p. 291.

BLAND, P. J.—Plaintiff as the assignee of the Springfield Volunteer Fire Department No. 1, sued the defendant for the purchase price ($150) for one horse, alleged to have been sold by the fire company to the defendant city. The defense was that the city bought five head of horses of the fire company at an agreed price of $740, but at the time one of the horses included in the purchase was dead, and that the fire company had but four horses, for which the city had paid the fire company the agreed price of $590. The jury returned a verdict for plaintiff for $150. A judgment was rendered on the verdict and the city appealed.

The controversy arises out of the uncertainty as to the

period when the city bought the horse, for whose value the suit is brought. The horse died in June, 1893, from overheat brought on by a run made to a fire. The city council on December 3, 1895, passed a resolution providing for the payment to the fire company of the "sum of $740 for the five head of horses now owned by the fire company," and afterwards paid $590 in pursuance of the resolution, but refused to pay the additional $150 because one of the horses was dead at the time the resolution was passed and the fire company had but four horses to turn over to the city. If there was no evidence but the resolution of December 3, 1895, showing any contract or dealing between the city and the fire company, in regard to the horses, there would be no doubt of the nonliability of the city to pay for the dead horse; but there is a good deal of testimony bearing on the purchase and ownership of this horse by the city long prior to December 3, 1895. This testimony tends to show that the fire company was a partnership formed in 1883 or 1884, and was engaged in the sprinkling business under contracts, not with the city, but with the property owners and business men; that at the same time under the auspices of the city council, it was a regularly organized volunteer fire company, having a chief, etc.; that such apparatus as the city had for extinguishing fires, it turned over to the fire company for use, and that each member of the company was paid by the city $2.50 for every run he made to a fire; a hook and ladder truck was purchased by the city and turned over to the fire company, which then had but one team of horses, which was used to a sprinkling wagon, and also to haul the hook and ladder truck to fires. The double use of this team was found to be unsatisfactory, and about the year 1890 or 1891, the chief of the fire company had several conferences with the city's fire committee looking to the purchase of another team. The fire committee was made up of city councilmen and appointed by

the full council or mayor. The city was short of funds and unable to buy a team; the fire company had money and was able to buy, and it was verbally agreed between the fire company and the city fire committee, that the fire company should advance the money necessary to make the purchase and that the city would reimburse the fire company as soon as it was able to do so. The evidence further tends to show that under a like arrangement the fire company, at the request of the fire committee, made purchases of apparatus, harness, etc., needed by the company, which purchases were recognized and paid for by the city council, and that after the first purchase of a team by the fire company the horses then purchased and afterwards purchased by the fire company, were shod and fed by the city, and the evidence is uncontradicted that all the purchases made by the fire company for the use of the fire department, under instructions from the fire committee, were recognized and tacitly approved by the city council, but were not expressly ratified by ordinance or resolution. As evidence of the attitude of the city toward the fire company, plaintiff read in evidence the following ordinance passed by the city council, October 22, 1889, to wit:

"Sec. 2. That the fire department of the city shall consist of two hose companies and two hook and ladder companies, one hose company and one hook and ladder company to be located in each of the districts above specified and named.

"Sec. 3. Each district shall be provided with suitable headquarters to be selected by the council. Each hose company shall be provided with one two-horse hose carriage, and each hook and ladder company shall be provided with one two-horse hook and ladder truck, and the city shall furnish horses necessary for the operation of said apparatus at all fires."

The defendant offered an instruction in the nature of a demurrer to the evidence, which was overruled. The defendant excepted to this ruling, offered no evidence, nor asked for any other instruction. For the plaintiff the court gave the following instruction:

"If you find from the evidence that for a long time prior to the time of the transaction in reference to the horses in controversy, the city of Springfield has universally ratified and adopted the purchases in its behalf of the city fire committee, and if there was in fact a committee known as the fire committee, and if you further find that said fire committee had been theretofore dealing with the fire company and purchasing articles from them and procuring advances on other purchases in behalf of the city, and if the city had always recognized the actions of said committee as binding on it, and if the said committee purchased horses in controversy from the company pretending to act for the city, and if the city accepted said horses and exercised ownership over them and recognized them as the property of the city, then plaintiff was entitled to pay for all of said horses, notwithstanding one of them may have died before any appropriation was made to pay for them.

"The plaintiff must prove the facts necessary to a recovery by a preponderance or greater weight of testimony and unless he has so done, your verdict should be for defendant."

This instruction assumes that the city may be held liable for the dead horse if the fire committee acted as its agent when it contracted with the fire company for the purchase of the horse, and if the city by its course of dealing in like matters ratified the contract. If the defendant was not a municipal corporation, whose powers are restricted in the matter of making contracts, the instruction would be correct; but it clothes cities with the same contractual powers as are possessed by private individuals. Cities can not be bound by

contracts, made by itself or by its agents, unless the contract is within its charter powers and is made in the manner prescribed by law.    Section 3157, Revised Statutes 1889, provides: "No county, city, town, village, school township, school district, or other municipal corporation shall make any contract, unless the same shall be within the scope of its powers or be expressly authorized by law, nor unless such contract be made upon a consideration wholly to be performed or executed subsequent to the making of the contract; and such contract, including the consideration, shall be in writing and dated when made, and shall be subscribed by the parties thereto, or their agents authorized by law and duly appointed and authorized in writing." This section deprived the city of power to make a contract with the fire company for the purchase of horses for the city, in any other manner than by a contract in writing, etc.    Having no power to contract in this matter otherwise than in writing, it could not create an agent to make a contract otherwise than in writing.    To hold otherwise would be to say that a city can make a contract by an agent in a manner it can not do directly.    The agreement made by the fire committee with the fire company to purchase the horses, was void, not being in writing, nor authorized by a writing.    Crutchfield v. Warrensburg, 30 Mo. App. 456; Inhabitants of Schell City v. Rumsey Mfg. Co., 39 Mo. App. 264; Woolfolk v. Randolph County, 83 Mo. 501.    The contract being void, the city was without power to ratify it.    The only legal evidence offered on the trial against the city was the ordinance of December 3, 1895.    The horse sued for was then dead—being dead, the city council could not by any contract, ordinance or resolution, bind the city to pay for it.    As the evidence shows the plaintiff can not recover in this action, the judgment will be reversed, without remanding the cause It is so ordered.    All concur.