## GREEN CLAY, Appellant, v. CITY OF MEXICO, Respondent.

**St. Louis Court of Appeals, February 25, 1902.**

1. **Accord and Satisfaction: RELEASE: ACCORD WITHOUT SATISFACTION DOES NOT OPERATE AS A RELEASE: CITIES OF THE THIRD CLASS: ORDINANCE FOR BRINGING STREET TO PROPER GRADE: COSTS.** A city of the third class may provide for bringing a street to an established grade at the expense of either the city or of the abutting property-owners, but an ordinance providing for the particular work is necessary to charge either with the cost of the work.

2. ——: ——: **RATIFICATION OF WORK DONE WITHOUT AUTHORITY OF ORDINANCE.** And if such work is done without an ordinance providing for it, the city can not be bound by a ratification of the work after it has been done by an action of the city council.

3. ——: ——. And in the case at bar, if the purpose of the improvement was to bring the street to the established grade, the street committee was, in the absence of any ordinance providing for the work, without authority to bind the city, and it was not within the power of the city to ratify the unauthorized act of the street committee and street commissioner so as to make the city responsible for damages alleged in plaintiff's petition.

Appeal from Audrain Circuit Court.—*Hon. Elliott M. Hughes*, Judge.

AFFIRMED.

### STATEMENT OF THE CASE.

Plaintiff is a resident of the city of Mexico, Audrain county, Missouri. The premises he owns and upon which he resides, fronts seven hundred feet on Clark avenue in said city.

Plaintiff has three driveways on his premises with approaches from the avenue into his property, and a tile drainage from his residence to the street from thence under a culvert across the street. In June, 1897, under the direction of the street and alley committee of the city, the city street commissioner entered upon the street in front of plaintiff's premises with laborers and cut down the street and destroyed the driveways leading into the street, moved the culvert across the street and stopped the flow of water from plaintiff's drainage pipes and turned the water from the street on to plaintiff's property; to plaintiff's damage, as the evidence tends to prove, from fifteen hundred to two thousand dollars.

The defendant is a city of the third class and as such has power to improve streets, establish grades and bring streets to grade. Sections 5858, 5859, and 5861, R. S. 1899.

On July 19, 1894, the city by ordinance established the grade of Clark avenue. The ordinance of the city, read in evidence, provides that all labor necessary to bring to grade the streets and alleys within the city and to keep the same in good repair and condition, unless otherwise specially provided by ordinance, shall be done at the expense of the general revenue fund of the city.

It is also provided that, "At the first regular meeting of the council, held after the annual city election in each year, or as soon thereafter as possible, it shall be the duty of the mayor, by and with concurrence of the council, to appoint from its numbers, committees of the council as follows, three each: on claims; on streets, alleys and sewers; on cemetery, parks and public buildings."

The duties of the street committee are defined, among other things, "To see that the ordinances in relation to the construction, improvement and repair of streets, alleys, sidewalks and sewers are strictly enforced, and report all violations of the same to the council. To exercise a general supervision over the streets, alleys, sidewalks and sewers of the city, make ex-

aminations of the same from time to time, report to the mayor
and council their actual condition, and submit such recommen-
dations or suggestions respecting their improvement or repair
as in their judgment may be necessary.    To examine and audit
all accounts for work done or material purchased and used in
the construction, improvement or repair of streets," etc.

By section 5765, Revised Statutes 1899, the mayor, with
the consent and approval of the majority of the city council,
is given power to appoint a street commissioner.    The ordi-
nance provides that the street commissioner shall personally
superintend or direct all the labor required to be done in the
opening, widening, grading, etc., of any street, alley, etc.      .

The evidence is that the topography of Clark avenue,
where it passes along and in front of plaintiff's premises, was
uneven; that it had not been graded; that in June, 1897, under
the direction of the street and alley committee, the street com-
missioner entered upon that part of Clark avenue fronting
plaintiff's property and over plaintiff's protest cut down the
street in some places and filled it at others.    That the cuts were
made at points where plaintiff's driveways connected with the
street and that the cuts at these points were from four to five
feet deep and that plaintiff's access to the street from his drive-
ways was destroyed; that the culvert through which plaintiff's
drainage passed off was filled up and the surface water in that
locality was by the fill so forced into the ditch on the side of
the street next to plaintiff's premises as to wash away the em-
bankment left as a foundation for a sidewalk, and in places
caused the water to back up and overflow plaintiff's property.

W. B. McIntire, a witness for the plaintiff, testified that
he was city engineer of the defendant; that he had in his pos-
session as such the grades fixed by ordinance for Clark avenue;
that when the work was done on the street the parties doing
the work did not call for the grade and that he did not give
them the grade and they could not have had the grade from
anyone else; that the work was not done according to the grade

as established; that the grade in front of plaintiff's premises is cut a foot below what the grade calls for and that in other places the grade is not as deep as the established grade. That in front of the premises the grade is about right to take a foot of macadam to bring it up to the proper grade.

The plaintiff offered to prove that the street commissioner's report of the work and expense of the same was made to the city council and by it approved and the cost of the work ordered paid. On the objection of the defendant this evidence was excluded.

At the close of plaintiff's evidence the court sustained a demurrer to the evidence. In due time plaintiff filed his motion for a new trial, which was by the court overruled and he appealed. The appeal was to the Supreme Court. It has been transferred to this court. Pending the appeal in the Supreme Court, defendant filed its motion to dismiss the appeal on the ground that plaintiff had settled his damages with Thomas Board and D. C. Owen, who were defendants in a suit then pending for the recovery of the damages sought to be recovered in this action, and defendant now presses this motion to dismiss in this court.

The case of Green Clay against Thomas Board and D. C. Owen was in this court by appeal at the October term, 1900, when it was reversed and remanded for misdirection of the jury. It appears from the certified copy of a paper filed in the Audrain Circuit Court on the first day of February, 1901, that the parties to that suit entered into the following agreement:

"*Stipulation.*—It is hereby agreed and stipulated that the case of Green Clay, plaintiff, against Thomas Board and D. C. Owen, defendants, now pending in the circuit court of Audrain county, Missouri, shall be continued until the June term of said court for 1901, and the motion for the change of venue in said cause shall be continued with said case by consent of parties. That the case has been settled by the parties thereto on the following terms: Defendants agree to pay off all of

the costs made in said case in the said circuit court that now remain unpaid, save and except the cost due plaintiff's witnesses and plaintiff shall pay his own witness fees. And plaintiff agrees to pay all costs created and made in said cause in the St. Louis Court of Appeals including the cost of printing the abstract of record, etc. Defendants have also this day paid to plaintiff cash in the sum of $100, the receipt of which is hereby acknowledged in full settlement of all claims said plaintiff has against said defendants or either of them. The entry of record dismissing said cause according to this stipulation shall be entered and made at the June term of said Audrain Circuit Court for 1901. Signed in duplicate at Mexico, Missouri, this February 1st, 1901. Green Clay, per Fry & Clay, per W. W. Fry; D. C. Owen; Thos. Board."

*Jno. T. Baker* and *Fry & Clay* for appellant.

(1) Defendant, a city of the third class, by its charter, has power to improve streets, establish grades and bring streets to grade. R. S. 1899, secs. 5858, 5859 and 5861. (2) Defendant by ordinance provided for the appointment of a street and alley committee. Defendant by ordinance defined the duties of said committee, among which it was to exercise a general supervision over the streets and alleys, employ workmen, teams, material, etc., work, repair and improve streets and carry into effect "all ordinances respecting the streets and alleys of the city." (3) By charter the office of street commissioner was created. R. S. 1899, sec. 5765. By ordinance the duties of the street commissioner are defined, among which are that he "shall personally superintend and direct all improvements," etc., "upon the streets," etc. (4) There is no question but what the work was done by the street commissioner at the direction and under the supervision of the street and alley committee, duly appointed by the council; that a written report by the street commissioner of the work and ex-

penses were made to and approved by the council. (5) There being no attempt to "change the grade" (as established), no ordinance was therefore necessary to hold the city liable for the work done, unless an attempt was made to bring the street to the grade (as established). Now, therefore, the officers either attempted to bring to grade (as established) this street, or they merely attempted to repair and improve the same without bringing it to grade. This proposition is beyond controversy. We contend and insist that it is immaterial which they attempted to do, for in either event the city is liable. Davis v. Railroad, 119 Mo. 180; Hickman v. City of Kansas, 120 Mo. 110.

*Robertson & Barnes* for respondent.

(1) The sole authority for changing the grade of a street is fixed by the charter of cities of the third class, in the city council, and must be exercised by ordinances duly enacted. (2) In the absence of an ordinance changing the grade of a street the officers or persons engaged in the work might be liable (Clay v. Board & Owen, decided by this court, March term, 1900), but not the defendant. Thompson v. City of Boonville, 61 Mo. 282; Rowland v. City of Gallatin, 75 Mo. 134; Stewart v. City of Clinton, 79 Mo. 603; Werth v. City of Springfield, 78 Mo. 107; Werth v. City of Springfield, 22 Mo. App. 12. (3) The reasons for the rule for the non-liability of the city in the absence of an ordinance are: First, that private property can not be taken or damaged for public use without just compensation; second, that the city can not act except under an ordinance duly enacted.

BLAND, P. J.—I. In the Board & Owen case there were two counts to the petition. One in trespass, the other for damages for the negligent cutting down of the street. The petition in the present case alleges in substance that the city of Mexico wrongfully and negligently cut down the street to

plaintiff's damage.   No trespass is alleged.   The injury alleged in both causes is the same but in neither case is it alleged that Board and Owen and the *city of Mexico* were joint *tortfeasors,* nor is the city charged at all with the commission of a tort, nor is it alleged in the petition in either case that Board and Owen and the city in conjunction cut down the street. On the contrary in the one case the negligent acts are charged to the sole account of Board and Owen and in the other to the sole account of the city of Mexico, acting through Board and Owen, and its street commissioner, as its agents and officers. The release of Board and Owen was not a release of them as joint tortfeasors with the city, and does not therefore inure to the benefit of the city.   If the stipulation is susceptible of a construction that will give to it the force and effect of an accord it shows on its face that Board and Owen agreed to pay certain costs.   Until the agreement is fully complied with there can be no satisfaction and there is no evidence that Board and Owen have paid these costs.   Accord without satisfaction does not operate as a release.   Our conclusion is that the motion to dismiss the appeal is without merit and is denied.

II.   There was no specific ordinance authorizing the improvement of Clark avenue.   Its grade had been established by a city ordinance, but no ordinance or resolution of the city council had been passed directing that the street be brought to the established grade.   The street and alley committee of the city council ordered the work to be done and it was done under the supervision of the street commissioner.   It seems from the evidence that it was not the purpose of the street committee to bring the street to exact grade, as the city engineer was not consulted about the work, nor did the street committee or superintendent seek to ascertain what the grade was.   But the performance of the work on the street did bring it, approximately, to the established grade.

Plaintiff offered to prove that a report of the work and of its cost was made by the superintendent of streets to the

city council and that this report was by the council approved and the cost of the work ordered paid. This evidence was excluded by the court.

For the purpose of discussing the question whether or not plaintiff made out a prima facie case, we will consider the rejected evidence as a part of the plaintiff's case and as tending to prove a ratification by the city of the work. We will then have two questions presented for solution: First, whether or not the street committee had the authority under the charter and ordinances of the city to order the street commissioner to do the work; second, if the street committee was without authority to order the work done, is the city liable on account of the ratification by the council of the unauthorized acts of the street committee and the street superintendent?

The city of Mexico, being a city of the third class, may pay for the grading of streets out of the general revenue fund. Third subdivision, sec. 5858, R. S. 1899. The general ordinance of the city provided that the expense of grading streets shall be paid out of the general revenue fund. The eighth subdivision of section 5858, supra, provides that, "Before the city council shall make any contract for.... grading any street.... an estimate of the cost thereof shall be made to the city engineer or other proper officer and submitted to the council, and no contract shall be entered into for any such work or improvement for a price exceeding such estimate: *Provided,* that no such estimate shall be required for the making of any local or special repairs."

A city of the third class may provide for bringing a street to an established grade at the expense of either the city or of the abutting property-owners, but an ordinance providing for the particular work is necessary to charge either with the cost of the work. City v. Eddy, 123 Mo. 546; Wheeler v. City of Poplar Bluff, 149 Mo. 36; Kolkmeyer & Co. v. City of Jefferson, 75 Mo. App. 678; Koeppen v. City of Sedalia, 89 Mo. App. 648; Reed v. Peck et al., 163 Mo. 333. If such work is

done without an ordinance providing for it, the city can not be bound by a ratification of the work after it has been done by any action of the city council. Kolkmeyer & Co. v. City of Jefferson, supra; Savage v. Springfield, 83 Mo. App. 323.

We conclude that if the purpose of the improvement was to bring the street to the established grade, the street committee was, in the absence of any ordinance providing for the work, without authority to bind the city and that it was not within the power of the city to ratify the unauthorized act of the street committee and street commissioner so as to make the city responsible for the damage alleged in plaintiff's petition.

III. It is contended by the plaintiff that the improvement of the street was not done for the purpose of bringing it to the established grade but was ordinary repair work. The fifth subdivision of section 5858, supra, provides that, "Ordinary repairs of streets may be made in the same manner prescribed in this subdivision of this section, but repairs on unimproved streets shall not exceed fifty dollars per year for each city block." The other improvements referred to are such as may be paid out of the general revenue fund of the city or by assessments against the abutting property-owners.

The duties imposed by the ordinance on the street committee nowhere authorize it to order repairs of streets. The duty of seeing that the streets are kept clean and to remove obstructions, etc., is by ordinance delegated to the street commissioner, and it may be conceded that the street committee may order, or that the street commissioner may without orders, in cases of emergency, make such repairs as are necessary to restore a street that has been suddenly damaged to a passable condition. But beyond this and the making of such trifling repairs as nailing down a few boards on a sidewalk or making some slight repairs to a street, the work for improving or repairing streets, alleys or sidewalks must, to bind the city, be provided for by an ordinance. The work alleged to have been

done, if not to bring the street to grade, was to improve the street and was of such a character and extent as could not lawfully be done in the absence of an ordinance or a resolution of the city council directing its performance. We so held in the case of Clay against Board and Owen and adhere to that ruling.

The judgment is affirmed. *Barclay* and *Goode, JJ.,* concur.