JOSEPH S. DONOVAN, as Administrator of the Estate of STEPHEN J. DONOVAN, Deceased, Appellant, v. KANSAS CITY, MISSOURI, a Municipal Corporation.—No. 38305.—175 S. W. (2d) 874, 179 S. W. (2d) 108.

Court en Banc, November 1, 1943.

Rehearing Denied, December 6, 1943.

Supplemental Opinion Filed, March 3, 1944.

*Armwell L. Cooper* and *Cyrus Crane* for appellant; *Cooper, Neel & Sutherland, Frank W. McAllister* and *William J. Carroll* of counsel.

434

*William E. Kemp,* City Counselor, and *John J. Cosgrove,* Assistant City Counselor, for respondent.

*James A. Reed, Robert J. Ingraham, James B. Nourse, Charles M. Blackmar, Dupuy P. Warrick, Roy K. Dietrich, James P. Aylward, Roy B. Thomson, Lawrence S. Searing, Rees Turpin* and *Harry L. Thomas, amici curiae.*

BOHLING, C.—Cast on demurrer nisi, plaintiff suffered judgment and appealed. Plaintiff seeks to recover for perishable foods delivered upon telephonic instructions to hospitals and penal institutions of Kansas City. The petition is in two counts in the alternative. The aggregate amount is laid at $97,562.47. Count one sounds in tort as for trover and conversion on the theory the title to the foods did not pass and seeks damages of the reasonable value of the foods. Count two is in equity and seeks the value of the benefits accruing to defendant. Plaintiff's core idea is that a contract is not involved. From the allegations in plaintiff's petition infra, the principal issues are whether defendant municipality is liable for perishable foods furnished for its immediate, necessary, and beneficial use in the maintenance of its sundry hospitals, reformatories, and kindred institutions and consumed by the inmates and attendants of such institutions (1) in the absence of a written contract therefor subscribed by the parties to the transaction (in accord with statutory—Sec. 3349, infra—and charter—Secs. 92 and 94, infra—requirements); or (in accord with charter and ordinance provisions) (2) in the absence of a written statement from the municipality's Director of Finance that a balance otherwise unencumbered existed to the credit of the appropriation against which such supplies were to be charged and a cash balance otherwise unencumbered existed in the treasury to the credit of the appropriation from which payment was to be made—Secs. 91, 92, 93, and 94, infra—or (3) in the absence of an award of the order for such perishable foods to the lowest and best bidder after due opportunity for competition—Secs. 80 and 92, infra.

Able counsel have advanced, we think, every conceivable issue for consideration and many authorities are presented. We understand

other matters are pending the outcome of this litigation. Due to the presentation and the importance of the case we may give it more space than it ordinarily would receive under the Missouri law involved. Learned authors recognize that confusion exists in the cases. We shall endeavor to restrict observations to the particular facts of this case, the prohibitory enactments and the public policy of Missouri —factors which defendant says distinguish Missouri cases from others and when recognized tend to eliminate some of the confusion. An innocent third party is not involved. We set out so much of the statutory and charter (and ordinance, if found necessary) provisions as are material to the disposition of the case.

Section 3349, R. S. 1939, reads: "No . . . . city . . . shall make any contract, unless the same shall be within the scope of its powers or be expressly authorized by law, nor unless such contract . . . , including the consideration, shall be in writing and dated when made, and shall be subscribed by the parties thereto, or their agents authorized by law and duly appointed and authorized in writing." See also Mo. Const., Art. IV, Sec. 48.

The following are from Article IV of the Charter of Kansas City:

"Sec. 80. Division of Purchases and Supplies. There shall be in the department of finance a division of purchases and supplies. The Commissioner of Purchases and Supplies shall make all purchases and contracts for purchase for the city in the manner provided by ordinance; provided, however, that in all cases there shall be opportunity for competition. . . . "

"Sec. 91. Liability for Authorization in Excess of Appropriation. The Commissioner of Purchases and Supplies shall not furnish nor order any supplies, materials, services other than personal, or equipment for a department unless he shall obtain from the Director of Finance a written statement that there is a balance otherwise unencumbered to the credit of the appropriation to which the same is to be charged and a cash balance otherwise unencumbered in the treasury to the credit of the fund from which payment is to be made, each sufficient to meet the obligation thereby incurred.

"If the Commissioner of Purchases and Supplies shall authorize or incur any obligation against the city without first securing such certification, he shall be liable personally and on his bond for the amount of such obligation.

"If the Director of Finance shall make a false certification as to the sufficiency of any such appropriation or unencumbered cash balance, he shall be liable personally and on his bond to the extent that the amount so certified exceeds such balance. . . . "

"Sec. 92. Contracts. All contracts shall be executed in the name of the city by the head of the department or officer concerned, except contracts for purhase of supplies, material, services other than personal, or equipment made by the Commissioner of Purchases and Sup-

plies. No contract or order imposing any financial obligation on the city shall be binding upon the city unless it be in writing and unless there is a balance otherwise unencumbered to the credit of the appropriation to which the same is to be charged, and a cash balance otherwise unencumbered in the treasury to the credit of the fund from which payment is to be made, each sufficient to meet the obligation thereby incurred, and unless such contract or order bear the certificate of the Director of Finance so stating . . . All contracts and purchases shall be awarded to the lowest and best bidder after due opportunity for competition in accordance with this charter and the ordinances of the city; but, unless otherwise provided by ordinance, it shall not be necessary to advertise for bids in any newspaper in case of contracts and purchases involving an expenditure less than $2,500. . . . ''

Section 93 relates to the payment of claims and to duties of the Director of Finance in the issuance of warrants on the Treasurer. So far as material here it contains in general terms provisions imposing certain duties and personal liability on the Director of Finance and liability on his bond for enumerated derelictions of duty. Consult Sec. 91, supra.

''Sec. 94. Obligations—When Void. All contracts, agreements or other obligations entered into, all ordinances and resolutions passed, and all orders made contrary to the provisions of this article shall be void, and no person whatever shall have any claim or demand against the city thereunder, nor shall the Council or any officer of the city waive or qualify the limitations fixed by this article, or impose upon the city any liability whatever in excess thereof.''

Ordinance provisions, if they become of importance, will be developed in the course of the opinion.

Plaintiff's petition is to be read in the light of the above enactments. Its allegations are to the following effect:

Stephen J. Donovan merchandised meats, poultry and like food products for human consumption in Kansas City. He died in 1940. Joseph S. Donovan, as administrator of Stephen J. Donovan's estate, is plaintiff. Under its charter and the police power, Kansas City operates and maintains hospitals and penal institutions. The petition charges ''that in such operation and maintenance it is and at all times has been necessary for the defendant to daily acquire and to constantly supply perishable foods to the sick and attendants in said hospitals and to such prisoners or inmates and attendants (as it has uniformly done) to sustain and preserve their health and life . . . '' Without this, it is alleged, great and irreparable injury and damage would result to defendant city and all the inhabitants thereof, and the operation and maintenance of said hospitals and penal institutions and the acquisition of such foods has been beneficial to defendant and has contributed to the general welfare of its entire population.

From November 23, 1937, to April 1, 1938, and from October 1, 1938, to April 29, 1939, from day to day, plaintiff's decedent, upon telephonic instructions from defendant, acting through its Commis-. sioner of Purchases and Supplies (hereinafter sometimes referred to as Commissioner) delivered to defendant large quantities of perishable foods for the purposes aforesaid (and which were so used) of the aggregate value of $97,562.47. Plaintiff's decedent delivered said food products believing, in good faith, that defendant would pay therefor, without which belief such deliveries would not have been made; but defendant refused plaintiff's decedent and plaintiff payment therefor, and still so refuses, upon the following grounds asserted by it: Here plaintiff's petition sets forth the municipality's defenses in greater detail than we have stated them in the first paragraph of this opinion.

The normal practice was to use five duplicate printed forms for the requisition and purchase of perishable foods. Upon the original would be listed the items required and the prices therefor. It showed the approval of the department head, bore the certification of the Director of Finance and was signed by the Commissioner of Purchases and Supplies. This would be sent to plaintiff's decedent, who would return the same with his invoices in triplicate to the Commissioner, which invoices would then be paid. Duplicates would go to various designated officials and one duplicate to plaintiff's decedent.

After the respective appropriations became exhausted, the practice was: The head of the department would requisition the foods upon defendant's printed form, subscribe the same and forward it to the Commissioner of Purchases and Supplies; then said Commissioner would order by telephone such foods from plaintiff's decedent and direct the date of delivery, in many instances causing said original to be stamped "Confirmation." Said original would carry no prices and no signature except the signature of the department head. The Commissioner retained the original and all copies of the printed form. Plaintiff's decedent, in turn, would deliver the requisitioned foods and take a receipt therefor, signed by the department head, upon his invoices and deposit with the Commissioner the original and two carbons of said invoices, which would be attached to defendant's requisition. Such were the only writings involved. Said writings did not include the written statements required of the Director of Finance. The Commissioner of Purchases and Supplies so ordered without first securing said written statements. Defendant had duly appropriated money to operate and maintain said hospitals and penal institutions, but, prior to the expiration of the respective fiscal years, said appropriations had become exhausted and at the several times of such purchases, there were no balances, otherwise unencumbered, to the credit of said appropriations and no cash balances, otherwise unencumbered, in the treasury to the credit of the fund from which payment was to be made.

The petition alleged that an opportunity for competition to' sell said foods existed but disavowed knowledge that said purchases were had after competition. None of the purchases amounted to $2,500 or more and none was under a term supply contract.

Each count also contained allegations to the effect that if the orders for the purchases be void, as claimed by the municipality, then title to the foods delivered never passed and defendant municipality wrongfully converted said foods to its use through consumption by the inmates and attendants of its institutions.

■ *Writing.* In the course of his brief plaintiff states that Sec. 3349, supra, was complied with and that said section is analogous to the statute of frauds, further stating that all orders were on decedent's invoices bearing, in print, "Baby Beef Market, S. J. Donovan, Mfg." The contention is ruled adversely to plaintiff in Fleshner v. Kansas City, 348 Mo. 978, 982[2], 156 S. W. 2d 706, 707[7], pointing out that an unenforceable contract, one within the statute of frauds, is not a void contract, one prohibited from being made. Performance on one side may make the former but does not make the latter enforceable. The transactions before us are not evidenced by writings within the purview of Sec. 3349; for instance, subscribed by the parties thereto or their lawfully authorized agents.

In addition: The orders carried no written certification by the Director of Finance that a due credit existed in the appropriation or that a due cash balance was in the treasury sufficient for payment as required by charter provisions. See Secs. 91 and 92, supra. Whether said orders were awarded after due opportunity for competition is not alleged.

 *Illegal or ultra vires.* Asserting the terms "illegal" and "unlawful" are synonymous (Dameron v. Hamilton, 264 Mo. 103, 123, 174 S. W. 425, 430; United States v. Mulvey, 232 Fed. 513, 519), the municipality argues the issues from the premise that the transactions involved were illegal, it being expressly prohibited from contracting orally. This might quickly dispose of the case. Plaintiff contends the purchases were not illegal in the true sense of the word.

The municipality cites decisions using the terms "illegal" and "unlawful" in characterizing like Missouri municipal contracts. Cheeney v. Brookfield, 60 Mo. 53, 54; Fleshner v. Kansas City, 348 Mo. 978, 981[1], 156 S. W. 2d 706, 707[3], among others. Generally courts leave parties to an illegal agreement where they put themselves; refusing aid to either. Exceptions to this rule are immaterial here.

 The cases stressed adjudicate contracts wherein the consideration or the promise or the purpose of the contract was illegal; such as: Sedalia Board of Trade v. Brady, 78 Mo. App. 585, 591; Rainer v. Western Union Tel. Co. (Mo. App.), 91 S. W. 2d 202, 207[2]; Finley v. Williamson, 202 Mo. App. 276, 289, 215 S. W. 743, 746[4, 5]; among others. Consult 17 C. J. S., p. 656, Sec. 272, p. 668, Secs.

279, 280. "Illegal" and "unlawful," as applied to acts of municipalities in decisions, more frequently refer to a lack of corporate authority; that is, acts ultra vires and void in the sense they are ineffectual to create legal rights and obligations. See Mo. Const. Art. IV, Sec. 48. City of St. Louis v. Davidson, 102 Mo. 149, 153, 14 S. W. 825, 826, 22 Am. St. Rep. 764, was an action by the city to recover for work actually performed by prisoners under a contract and not paid for by defendant. The court considered the plea of the city's legal disability to contract personal to the city and not available to defendant, and treated the contract as ultra vires the municipality in affirming the judgment for the city. An ultra vires contract in its strict and true conception is one which is not within the power of the municipality to make. "'A contract of a corporation, which is ultra vires, in the proper sense, that is to say, outside the object of its creation as defined in the law of its organization, and therefore beyond the powers conferred upon it by the Legislature, is not voidable only, but wholly void, and of no legal effect. The objection to the contract is, not merely that the corporation ought not to have made it, but that it could not make it. The contract cannot be ratified by either party, because it could not have been authorized by either. No performance on either side can give the unlawful contract any validity, or be the foundation of any right of action upon it.'" Quoted from Central Transportation Co. v. Pullman's Car Co., 139 U. S. 24, 59, 11 Sup. Ct. 478, 35 L. Ed. 55, in Anglo-American Land, M. & A. Co. v. Lombard, 132 Fed. 721, 737, 68 C. C. A. 89, 105 (certiorari denied, 196 U. S. 638, 49 L. Ed. 630, 25 S. Ct. 793). See also l. c. 742 and 110, respectively. It is to be noted that the last cited cases involved private corporations. In a less strict sense, municipal contracts entered into in a manner and form not prescribed by statute or charter are spoken of as ultra vires. Ultra vires and illegality are not synonymous. A given contract may have both defects, or one without the other, or neither. With respect to ultra vires contracts of municipalities the United States Supreme Court in Thomas v. Richmond (1870), 12 Wall. (79 U. S.) 349, 356, said: "But, in the case of municipal and other public corporations, another consideration intervenes. They represent the public, and are themselves to be protected against the unauthorized acts of their officers and agents, when it can be done without injury to third parties. This is necessary in order to guard against fraud and peculation. Persons dealing with such officers and agents are chargeable with notice of the powers which the corporation possesses, and are to be held responsible accordingly. . . . The protection of public corporations from such unauthorized acts of their officers and agents is a matter of public policy in which the whole community is concerned. And those who aid in such transactions must do so at their peril." The petition does not disclose an illegal consideration or an illegal promise or an illegal purpose within

the purview of the cases stressed by the municipality. The municipality's challenge reaches the failure to follow statutory and charter enactments for the creation of a binding obligation of the municipality. It is in this restricted sense, i. e., in the sense of an ultra vires act, that the terms "illegal" and "unlawful" are here understood.

■ *Estoppel.* We are of opinion equitable estoppel may not be successfully invoked against the defenses asserted by the municipality under the pleaded facts. Plaintiff contends contra. We have no quarrel with the result of the cases here stressed by plaintiff, viz.: Wilson v. King's Lake Drainage & Levee District (Banc), 257 Mo. 266, 165 S. W. 734; Edwards v. Kirkwood, 147 Mo. App. 599, 127 S. W. 378; Schueler v. Kirkwood, 191 Mo. App. 575, 177 S. W. 760; United Shoe Machinery Co. v. Ramlose, 231 Mo. 508, 132 S. W. 1133. Nortoni, J., was the author of the opinions in the Edwards and Schueler cases, and in the Wilson case before the Court of Appeals, (176 Mo. App. 470, 158 S. W. 931), which was certified here, where copious quotations were taken from his opinion.

In Edwards v. Kirkwood, Edwards, an attorney, had collected more than $10,000 in taxes for the city. The prayer of his petition was (147 Mo. App. 1. c. 609) ■ that the city be directed and decreed to pay plaintiff $1,000 out of the moneys so collected and paid to the city. The case went off on the issue of a defective exercise of an intra vires corporate power and that, in the circumstances, equitable estoppel applied. Plaintiff asked that the city turn over what it held as his property. He did not ask the imposition of new taxes on the citizens. In proper circumstances a municipality may be estopped the same as an individual. However, the court considered the instant issue not involved and passed it with agility (147 Mo. App. 1. c. 614), vide: "Whatever may be said on the application of the doctrine of estoppel to municipal corporations with respect to ultra vires enactments or contracts expressly prohibited by law, is irrelevant here for the reason the case presents no such question and it will not be noticed."

In Wilson v. King's Lake Drainage & Levee District, the organization of the original drainage district had been set aside. In the meantime plaintiff performed certain construction work for the original district. The district was reorganized, the defect being cured, and the reorganized district as such "received, accepted and appropriated" the construction work theretofore performed by plaintiff and, pursuant thereto, ran assessments upon lands to pay for the construction work so appropriated and then remitted and credited in part said lands with assessment benefits for and on behalf of the construction work "so adopted, appropriated and used." 257 ·1. c. 278, 287. Wilson was not a party to an ineffectual contract with the reorganized district. His contract with the original district has no

infirmity as a contract. His petition alleged that the construction work involved was contemplated and provided for in the reorganized district and, consequently, that the amount of the assessments of benefits was and should have been adequate to pay the amount due and unpaid for said construction work. The reorganized district made use of a strong hand in appropriating Wilson's work.

In Schueler v. Kirkwood a recovery of the reasonable value, independent of the contract, of two aseptic tanks installed under a contract calling for three aseptic tanks was allowed, the court stating the recovery could not exceed the contract price. The third tank was not installed on acount of nonperformance of certain matters by the city. Here the municipality had collected, under an ordinance subsequently held unconstitutional, the necessary taxes to meet plaintiff's claim and turned them into the general revenue fund. A defect in the ordinance authorizing the tanks was considered a minor irregularity. The foregoing sufficienly distinguishes this from the instant case.

In United States Machinery Co. v. Ramlose (Banc), 231 Mo. 508, 538, 132 S. W. 1133, 1140, Graves, J., dissenting, (first appeal, 210 Mo. 631, 109 S. W. 567), a foreign corporation which had failed to comply with statutory provisions authorizing it to transact business in this state was held entitled to maintain replevin for shoe machinery held by defendant under a contract or contracts. A statute provided that no foreign corporation which had failed to comply with the statutory provisions authorizing the transaction of business in this state "can maintain any suit or action, either legal or equitable, in any of the courts of this state, upon any demand, whether arising out of contract or tort." Sec. 1026, R. S. 1899. Consult Sec. 5077, R. S. 1939. The court reasoned that there was nothing in the statutes prohibiting foreign corporations suing in this state to recover possession of their property held by a citizen of this state under a void contract, questioning the constitutionality of such a statute, if any; that the statute applied where the foreign corporation asserted rights which were violative of the laws of this state and not where it was asserting a right under the laws of the country; that the foreign corporation was not seeking to enforce the contract nor would the action necessarily give effect to the contract; and that the court would lend its aid to a foreign corporation in its efforts to recover its property, in which defendant confessedly had no legal or equitable interest. We think the case distinguishable, among other possible grounds, in that it decided that the machines, as machines, the property of plaintiff in the possession of defendant when the action was instituted, would have to be returned; whereas the instant case involves a prohibitory statute applicable alike to all citizens of the United States; involves the rights of a political subdivision of the state and the public, its citizens calling into action different principles of law, and in that plaintiff would

444

 have us go a step farther than the award of the return of the property.

, We quote 31 C. J. S., p. 427, Sec. 143: "The doctrine of ultra vires is applied with greater strictness to public than to private corporations, and, as a rule, a municipality . . . is not estopped by an act or contract which is beyond the scope of its corporate powers, especially where the party claiming the estoppel was aware of the municipal incapacity. . . . An estoppel to deny the validity of the act of a governmental body may not be based on the very act to which the incapacity relates. The doctrine of estoppel may not be applied against a municipal corporation . . . where the subject matter of the act or contract is illegal, or malum prohibitum, nor . . . under a contract which is void. A municipality may not be estopped by acts or contracts which violate mandatory constitutional or statutory provisions . . . The rule . . . has been held to be unaffected by the fact that benefits have accrued to, and have been accepted by, the public . . . " (See also Sec. 111.) And Sec. 144 points out that the distinction to be observed with respect to ultra vires actions of a municipality between an irregular exercise of a corporate power and a total absence or want of such power, permitting of the application of the doctrine of estoppel against a municipality, as right and justice require, "where the act or contract relied on to create the estoppel was within its corporate powers, although the method of exercising the power was irregular or unauthorized", is subject to the "important limitation . . . that no estoppel can arise in favor of one who has knowingly assisted or agreed to assist the municipality in the illegal exercise of its power; and it has been held that the rule will not apply where the method of the exercise of the power is not a mere irregularity but actually forbidden by statute or other positive law, since this in effect brings the case within the ultra vires rule discussed supra Sec. 143." Missouri cases are in accord. It would not be good law for an estoppel to eliminate a defense in accord with statutory declared public policy that such declared public policy be defeated. Mullins v. Kansas City, 268 Mo. 444, 460(V), 188 S. W. 193, 197(V).

"Cities cannot be made liable, either on the theory of estoppel or implied contract, by reason of the accepting and using the benefits derived from void contracts . . . " Likes v. Rolla, 184 Mo. App. 296, 304, 167 S. W. 645, 647[3]. "Vain and futile would constitution and statutes and charter be, if any officer of the state, or of a county, or of a city or other municipality, could follow them only when he saw fit. If by estoppel such salutary provisions, enacted with wise foresight as checks upon extravagances and dishonesty, can be utterly abrogated at will by any officer, such provisions then subserve no purpose and the public corporation has no earthly protection against greed or graft. . . . This case illustrates the colossal op-

portunity for evil allowed by such a view." Mullins v. Kansas City, 268 Mo. 444, 461, 188 S. W. 193, 197. Consult State ex rel. v. Murphy (Banc), 134 Mo. 548, 568, 31 S. W. 784, 788, 34 S. W. 51, 35 S. W. 1132, 56 Am. St. Rep. 515, 34 L. R. A. 369. Equitable estoppel is impotent to purge transactions of the fatal infirmity of being in violation of law.

Crutchfield v. Warrensburg, 30 Mo. App. 456, 462, states that historically the purpose of the statute was to cut off absolutely claims not in writing, to prevent extravagance and restrain officials; that the law will not make that valid without a writing which the law requires to be in writing; that no cause of action, whether on quantum meruit, or in damages, arises from a void contract; that although the municipality possessed the necessary corporate authority, the statute prescribed the manner for its exercise and it could not be exercised otherwise; and that notwithstanding plaintiff's claim was morally just and the charge reasonable, "we are without power to enforce mere moral precepts in contravention of positive statute." Missouri cities are creatures of the state, exercising powers conferred by expressed or implied provisions of law. Their corporate powers and the authority of their officials are found in enactments of a legislative nature. Their officers are special, not general, agents. The public and those dealing with municipalties and their officers are charged with notice of their corporate powers and the authority of their officers and must govern themselves accordingly.

We hold, in conformity with Missouri decisions, that the statutory requirement with respect to contracts with municipalities being in writing is mandatory, not merely directory, and, absent a written contract, transactions such as revealed by this record are ultra vires the municipality in the primary sense of that term. By statutory prohibition, Sec. 3349, supra, municipal contracts not within the scope of the municipality's powers, contracts not expressly authorized by law, and contracts, including the consideration, not in writing, dated when made and subscribed by the parties or their authorized agents are placed on the same legal footing. Under the statute it is as much ultra vires for a Missouri municipality to incur a liability in the nature of a contractural obligation in the absence of a writing as to incur a liability not within the scope of its corporate powers or one not expressly authorized by law. See Savage v. Springfield, 83 Mo. App. 323, 329; Cook & Son v. Cameron, 144 Mo. App. 137, 143, 128 S. W. 269, 270; Perkins v. Independent School District, 99 Mo. App. 483, 488, 74 S. W. 122, 124; Montague Compressed Air Co. v. Fulton, 166 Mo. App. 11, 29, 30, 148 S. W. 422, 428[11]; Likes v. Rolla, 184 Mo. App. 296, 302, 167 S. W. 645, 649; State ex rel. v. Dierks, 214 Mo. 578, 589(II), 113 S. W. 1077, 1080(2); Cotter v. Kansas City, 251 Mo. 224, 229, 158 S. W. 52, 53[1]; Eureka Fire Hose Mfg. Co. v. Portageville (Mo. App.), 106 S. W. 2d 513, 516; Fleshner v.

Kansas City, 348 Mo. 978, 982, 156 S. W. 706, 707[7] ; 3 McQuillin, Municipal Corporations (2d Ed. 1928), Secs. 1274, 1283.

Plaintiff does not seek the recovery of what was parted with, but a money judgment of its reasonable value or of its value to the municipality. Affording the public that protection safeguarded by affirmative legislative enactment is the paramount right, legally and morally; otherwise we have judge-made law contravening affirmative legislative enactments and established public policy.

If the failure to contract in writing be viewed as an irregularity, it was such an irregularity as failed to comply with mandatory statutory provisions for the protection of the municipality against extravagance or corruption, and the defenses are available under this view.

The foregoing is applicable, we think, to the municipality's charter provisions requiring the contract to be in writing and the written statements of the Director of Finance with respect to balances to the credit of the appropriation and to the cash in the appropriation, et cetera.

As briefly as we may of the cases stressed by plaintiff under "Conversion" and "Equity."

*Conversion.* Plaintiff says he may waive the contract and recover in tort as for trover and conversion. To give rise to an action in tort the right violated must have been created and the corresponding duty must have been imposed by law. The foundation of the municipality's liability was a contract prohibited by a statute placing a disability upon the city and imposing no legal duty upon the city. The contract may not be waived for an action in tort, especially for a money judgment, in all instances. Consult 1 C. J. S., p. 1147, Sec. 51; 31 C. J., p. 1091, Sec. 205. The cases here relied upon by plaintiff may be distinguished.

In Hawkins v. Cox, 334 Mo. 640, 648[3, 5, 6], 66 S. W. 2d 539, 543[3, 4, 7, 9] a special road district exceeded its powers in purchasing road machinery in that it became indebted in excess of its revenue and income for the year (in contravention of legislative enactments) and in that the contract of purchase was not in writing. The court enjoined the carrying out of the contract and payment of the agreed price. The opinion contains dictum that the title had not passed to the district but remained in the seller, stating that it was not for the court to say how the district would work out the problem. The subject matter of the ultra vires contract was in existence and we perceive no reason why in such instances the public corporation should retain the property while refusing to do justice. This may be a distinction between illegal and ultra vires contracts. The dictum did not call for unauthorized and new burdens on the public.

United Shoe Machinery Co. v. Ramlose (Banc), supra, here cited, is discussed under "Estoppel", supra.

Plaintiff states that in Dooley v. Kansas City, 82 Mo. 444, 446, and Barton v. Odessa, 109 Mo. App. 76, 82 S. W. 1119, which followed the Dooley case, the city took possession of and used private property for the protection of the health and safety of the community; that in so doing it exercised an authorized power and acted through its proper officers but in an improper manner to the injury, as here, of private property rights. In each of these cases, which involved the care of patients suffering from smallpox, an emergency confronted the city authorities, necessitating immediate action, and the real gist of the municipality's liability was in tort. The plaintiffs were not parties to a prohibited agreement. In the instant case plaintiff's petition charges that from November 23, 1937, to April 1, 1938, both inclusive (a period in excess of four months), and from October 1, 1938, to April 29, 1939, both inclusive (a period in excess of six months), from day to day, upon telephonic instructions, plaintiff's decedent delivered the perishable foods involved. Plaintiff, nisi as well as here, proceeds upon the theory all the transactions are involved and the issues are so viewed. In these circumstances there existed no such emergency as to authorize plaintiff's decedent and the officials to continue violating statutory and charter provisions enacted for their guidance and for the protection of the public. See, as to emergency, Mallon v. Water Commissioners, 144 Mo. App. 104, 110, 128 S. W. 764, 765. We take judicial notice of the charter of Kansas City (Mo. Const., Art. IX, Sec. 16), and find among its provisions that Secs. 87 and 89 provide for the council's making additional appropriations and making emergency apppriations, respectively.

Hunt v. Boonville, 65 Mo. 620; Soulard v. St. Louis, 36 Mo. 546, and Allison v. Richmond, 51 Mo. App. 133, are distinguishable on the facts, or on the issues presented, or both. For instance, plaintiffs were not parties to any prohibited contract.

Lively v. Webb City (Mo. App.), 106 S. W. 2d 517, 520[3], held that trover and conversion would not lie for the reasonable value of chats etc., used on the city streets and other projects where the street commissioner was without authority to make the purchases. The court said: ". . . while it [the act] may have amounted to a conversion, yet the defendant city is not liable for his acts, because they were unauthorized, and at the time of such conversion he was not the duly constituted agent of the defendant city, acting within the scope of his authority."

The stated defenses are available against this count of the petition. *Equity.* Plaintiff says he may sustain his count in equity if an action ex contractu or ex delicto does not lie, have an accounting and secure a money judgment of the "value of the benefits" to the municipality. This is on the theory of "no right without a remedy" which is not necessarily of universal application (see 30 C. J. S. 507,

n. 51 et seq.) . Plaintiff's right to an accounting or to a money judgment is incidental to his claimed right to relief. Plaintiff's brief stresses certain cases found in our discussion of "Estoppel," supra, and Pimental v. San Francisco, 21 Cal. 351, 362 (a frequently cited case by Field, C. J., later of the United States Supreme Court, stating by way of dictum, after setting forth the principle: "If she [the city] obtain other property, which does not belong to her, it is her duty to restore it, or if used, to render an equivalent therefor, from the like obligation. Argenti v. San Francisco, 16 Cal. 255, 282. The legal liability springs from the moral duty to make restitution"); Chapman v. Douglas County, 107 U. S. 348, 357, 2 S. Ct. 62, 70, 27 L. Ed. 378, 381; Fairbanks, Morse & Co. v. City of Wagoner, 86 Fed. 2d 288, 292[2] (original submission, 81 Fed. 2d 209); Busch-Sulzer Bros. Diesel Engine Co. v. City of Walthers, 133 Fed. 2d 65. The principle is stated in Wood v. Kansas City, 162 Mo. 303, 312, 62 S. W. 433, 435, viz.: "The obligation to do justice rests upon all persons, natural and artificial, and, if a municipality obtains the money or property of others without authority, the law, independent of any statute, will compel restitution or compensation." The Fairbanks, Morse & Co. case states: "We think, however, it [the corporate plaintiff] is entitled to equitable relief . . ." These cases differ in fact and in law. They were to the effect that the property of plaintiff, in existence, should be restored to the plaintiff or paid for within a reasonable time. Bartlett v. Lowell, 201 Mass. 151, 87 N. E. 195, 197(2). They did not impose a tax burden on the public. They did not render ineffectual mandatory statutory enactments contra. In the Wood case, Wood was not a party to any agreement. The city took and kept in its general treasury with a strong hand notary fees earned by Wood and paid by the citizens. The principle is not applied when counter to paramount principles of law. See Hethcock v. Crawford County, 200 Mo. 170, 178, 98 S. W. 582, 584. Plaintiff's brief quotes a passage from Berry v. Stigall (253 Mo. 690, 696, 162'S. W. 126, 127[1], 50 L. R. A. (N. S.) 489, Ann. Cas. 1915C, 118), founded upon statements in 6 Pomeroy's Equity Jurisprudence (3d Ed. 1905), Secs. 920, 921 (cited therein as: "2 Poweroy's Equitable Remedies") and 1 Story's Equitable Jurisprudence (13 Ed., 1886), p. 645. The referred to authorities treat of the equity of subrogation.

For the purposes of a remedy money relief may be had at law as on constructive or quasi contracts; i. e., obligations created by law. They fall into three classes: 1. Obligations founded upon a record, as a judgment. 2. Obligations founded upon a statutory, official, or customary duty. 3. Obligations founded "upon the fundamental principle that no one ought unjustly to enrich himself at the expense of another." 17 C. J. S., p. 322, Sec. 6; 12 Am. Jur., p. 502, Sec. 6; Williston on Contracts (1936 Ed.), Secs. 3, 1454; Keener on Quasi

Contracts (1893 Ed.), pp. 14-16; Woodward on Quasi Contracts (1913 Ed.), Sec. 1; 2 Harvard Law Review (Ames), p. 64; 21 Yale Law Journal (Corbin), 533; Moses v. MacFerlan (1760), 2 Burr 1005, 1008, 97 Eng. Rep. 676, 678. They are equitable in character, the obligation arising from the law and natural justice. It is essential to the action that defendant has received a benefit from the plaintiff and that the retention of the benefit by the defendant be inequitable. The cases deny a recovery for a benefit received under an ultra vires contract prohibited by positive law. Thomas v. City of Richmond, 12 Wall. (79 U. S.) 349, quoted supra; Litchfield v. Ballou, 114 U. S. 190, 193, 5 S. Ct. 820, 29 L. Ed. 132; see authorities under "Estoppel," supra, and additional Missouri cases in 84 A. L. R., l. c. 979; Strickler v. Consolidated School District, 316 Mo. 621, 625, 291 S. W. 136, 138[3]; City of Wellston v. Morgan, 65 Oh. St. 219, 228, 62 N. E. 127, 128; Williston on Contracts (1936 Ed.), Secs. 1770, nn. 13, 20, 1786A; 3 McQuillin, Municipal Corporation (2d Ed. 1928), p. 815, Sec. 1274; Woodward on Quasi Contracts (1913 Ed.), Sec. 161.

It was held in Duval v. Laclede County, 21 Mo. 396, although a statute provided that counties should allow a reasonable amount for the funeral expenses of paupers, that the payment of such expenses would not create a liability for reimbursement without the consent of the county. The instant case is not within the observations of Scott, J., dissenting on the ground of an emergency and an implied promise to pay. See also Handlin v. Morgan County, 57 Mo. 114.

An action on a constructive or quasi contract would present the issues here injected. Equity supplies a defect in the legal remedy. Plaintiff's difficulty lies in the legal policy—a policy which makes the transactions void and precludes a remedy. The rule that the common law and equity yield to express legislative enactments contra, precluding any action at law or in equity on a contract forbidden by law, is applicable. 30 C. J. S., p. 362, nn. 57-63, p. 411, n. 2, p. 503, Sec. 103; Litchfield v. Ballou, 114 U. S. 190, 194, 5 S. Ct. 820, 29 L. Ed. 132. Consult Strickler v. Consolidated School District, 316 Mo. 621, 625, 291 S. W. 136, 138[5]; Louthan v. Stillwell, 73 Mo. 492, 500; Board of Education v. American Nat. Co., 135 Okla. 253, 259, 275 Pac. 285, 289[10, 11].

Cases like Ewing v. Vernon County, 216 Mo. 681, 116 S. W. 518, rest upon a reasonable implication that under statutory provisions some particular item of expense was allowable to an official. Plaintiff's decedent was not an official. The only way an obligation could be created in his favor under the instant record was by a valid contract. There was none and such cases are not applicable.

An assignment of error and a point in plaintiff's brief reads: "Sections 80, 91, 92, 93 and 94 of Article IV of defendant's Charter are unconstitutional and void, in that they deprive plaintiff of his property without due process of law, take his property for public

use without just compensation, and deny plaintiff the equal protection of the law, in violation of the Fifth and Fourteenth Amendments to the Constitution of the United States and Sections 10 and 30 of Article II of the Constitution of Missouri." The matter is not further developed, plaintiff presenting no contention with respect to any specific provision of the cited sections being in violation of constitutional provisions. It was plaintiff's duty to point out wherein, why, and wherefore said sections were unconstitutional. His scheduling of the clauses of the constitution alleged to be violated does not show wherein they were violated. The point is not preserved for review under our rules. Hartzler v. Metropolitan Street Ry. Co., 218 Mo. 562, 563, 565, 117 S. W. 1124; Scott v. Missouri Pac. Rd. Co., 333 Mo. 374, 389[14], 62 S. W. 2d 834, 840[17, 18]. The charter provisions are not necessarily decisive of the instant case.

 Under the petition plaintiff's decedent had been transacting business with the city. He had actual as well as constructive notice of its methods. The General Assembly has chartered the course for the courts. Both systems have been followed. The Missouri public policy considers the rights of the public paramount to the rights of the individual; that is, it is better to adopt, by legislation, a rule under which individuals may suffer occasionally than to permit a rule subjecting the public to injury through the possibility of carelessness or corruptness of public officials. Individual cases may present apparent hardships but it is our duty to be guided by the law the same as it was plaintiff's decedent's duty to be so guided in the first instance.

The judgment is affirmed.

PER CURIAM:—The foregoing opinion by BOHLING, C., in Division Two, is adopted as the opinion of the Court en Banc. All concur except *Gantt, J.,* absent.

 PER CURIAM:—This case was transferred from Division Two to the Court en Banc where it was briefed anew by the parties and reargued. The constitutional questions which were not specifically ruled in the divisional opinion were fully presented. The court hereby rules that Sections 80, 91, 92, 93 and 94 of Article IV of respondent's Charter and Section 3349, Revised Statutes of Missouri, 1939, as tested by Amendment Fourteenth, Section 1, of the Constitution of the United States are constitutional and valid and do not deprive appellant of his property without due process of law or deny appellant the equal protection of the law. In all other respects the opinon of BOHLING, C., in Division Two is adopted as the opinion of the Court en Banc. All concur except *Gantt, J.,* absent.